VINCENT C. KING & C. VOLNEY KING, Copartners, *vs.* JAMES G. BATTERSON.

Action on the guaranty offered in the following letter :

" H. R. Horton, Esq.: If Mr. J. G. Haley contracts with you for lime and plaster to be used in fire-proofing and plastering City Hall and Court House Buildings in Providence, promising to pay your bills from moneys received by him for work done on said buildings, I will guarantee the faithful performance of such contract with you. Yours truly, J. G. Batterson."

*Held,* that this offer of guaranty was conditional, and that Batterson was entitled to notice that the conditions were accepted.

*Held*, further, that without distinct notice of such acceptance, Batterson's guaranty did not take effect.

The lime and plaster were in fact furnished, not by Horton, but by the plaintiffs, the Kings.

*Held*, that the plaintiffs could not hold Batterson on his guaranty offered to Horton.

*Held*, further, that they could not maintain their action on the ground that Horton was their agent.

PLAINTIFFS' petition for a new trial.

This action was *assumpsit* brought in this court. At the October Term, A. D. 1879, the plaintiffs were nonsuited, and thereupon filed this petition.

*July* 10, 1880. POTTER, J. This action is for goods sold and delivered to Jas. G. Haley upon the guaranty of the defendant, of which the following is a copy:

"HARTFORD, CONN., 23*d May*, 1876.

"H. R. HORTON, ESQ., 78 So. Water St., Providence, R. I.

"DEAR SIR: If Mr. J. G. Haley contracts with you for lime and plaster, to be used in fire-proofing and plastering City Hall and Court House Buildings in Providence, promising to pay your bills from moneys received by him for work done on said buildings, I will guarantee the faithful performance of such contract with you.      Yours truly,

"J. G. BATTERSON."

And which was written in reply to a letter, of which the following is a copy:

"PROVIDENCE, R. I., *May* 23, 1876.

"J. G. BATTERSON, ESQ.,

"DEAR SIR: Mr. James G. Haley called on me yesterday, asking for estimate on stock for City Hall and Court House Buildings. He referred me to you, and said you would guarantee the payment of all stock delivered him in these jobs. Please inform me if this is so by return mail.      Yours truly, &c.,

"H. R. HORTON."

The goods were furnished, not by Horton, to whom the guaranty was given, but by the plaintiffs.

Two points may be considered in this case.

*First*, was notice of acceptance necessary?

The instrument or writing relied on is not an absolute undertaking to pay for certain goods if the buyer does not. It is an

offer made to the seller to be bound if the purchaser will comply with a certain condition. We think that being an offer, the defendant was entitled to notice at any rate that the condition had been complied with, on which condition he was to become liable.

It is not an absolute promise to pay for such advances as a person may make to another, where the only condition, if it can be called a condition, is that the guarantee shall furnish the goods; but there is another condition, that a certain promise was to be made by the purchaser to pay out of certain funds, and the guarantor had a right to know that this promise was made in a manner to be available to him. See cases cited in Brandt on Suretyship, §§ 159, 161–163.

There must always be an acceptance, but this may be express or implied. And if the guaranty be by letter for a future operation, especially of uncertain amount, then there should be distinct notice of acceptance. The guarantor should have an opportunity to know his liability and provide for it. " And unless the transaction is such that it of itself gives him all the knowledge he needs at a proper time," then he should have distinct notice. 2 Parsons on Contracts, *14. And the relations of the parties, nearness of residence, are often mentioned as circumstances to be considered. And see 1 Chitty on Contracts, 11th ed. 742, note; *Whitney* v. *Groot*, 24 Wend. 82, 84; 2 Amer. Lead Cas. 75.

*Second.* The guaranty was addressed to Horton, and the plaintiffs, not Horton, furnished the goods, and sue for them.

Now, ordinarily, a guaranty is not negotiable. It may indeed be made so, if such appears to be the intention of the guarantor. It may not be addressed to any particular person. It may be an offer addressed to all the world, as in the case of a reward offered. But if addressed to a particular person, as in this case, we think it cannot be transferred so as to enable another to sue upon it in his own name. There may be good reasons why the guarantor should be willing to deal with one person and not with another; and there may be equities, or other dealings, between the guarantor and the guarantee which the former may desire to provide for, and has a right to provide for. Brandt on Suretyship, §§ 96, 97; *Taylor* v. *Wetmore*, 10 Ohio, 490; *Bleeker* v. *Hyde*, 3 McLean, 279.

Can the plaintiffs maintain the suit on the ground that they were the real party in interest, and that Horton made the contract as their agent. We think not.

In 2 Smith's Lead. Cas. *373 are cited many cases where it has been held that on a contract made with one person, if he was agent for another, the real principal may sue or be sued on it, " unless its terms, or the circumstances under which it is made, indicate an intention to bind or entitle one to the exclusion of the other." It has been held that this does not extend to negotiable paper, so as to charge an unnamed principal. 2 Smith's Lead. Cas. *375.

The reasoning of the Supreme Court of New York in *Walsh* v. *Bailie,* 10 Johns. Rep. 180, applies to this part of the case as well as to the question of negotiability. The defendant had written to the plaintiffs in Albany that he would be responsible, to a certain amount, for goods to be supplied to one Sherman, in Western New York, on the best terms. The plaintiffs employed a person living nearer Sherman to supply the goods. The court held the defendant not liable. The person employed might not have the capital or means to sell on good terms. The defendant might have been willing to be answerable to the plaintiffs, having confidence in them. He made no contract to be answerable to anybody else. It was enough that he had not.

Nearly all the cases where an undisclosed principal has been held entitled to sue are cases of ordinary contracts. When a contract is for the purchase of goods, and the quality and quantity of the goods and the price are defined, no injury might result; and in such cases it might be within the contemplation of the parties that the work, *e. g.,* repairing wagons, should be, or from the known situation of the party must be, done by sub-contract. See *British Wagon Co.* v. *Lea,* 28 W. R. 349 ; L. R. 5 Q. B. Div. 149. But when the contract is such as to imply peculiar confidence in the honesty, pecuniary ability, knowledge, or skill of the person to whom a guaranty is addressed, there is good reason for holding it to be strictly personal, unless its language implies the contrary.

As to the assignability of a contract where special confidence is reposed, see *Burial Board of St. Margaret, Rochester,* v. *Thomp-*

*son*, L. R. 6 C. P. 445, 457 ; *Robson* v. *Drummond*, 2 B. & Ad. 303 ; *British Wagon Co.* v. *Lea*, L. R. 5 Q. B. Div. 149 ; *Humble* v. *Hunter*, 12 Q. B. N. S. 310 ; *Boulton* v. *Jones*, 2 H. & N. 564, 566.

And as to the weight of authority on this question of suit by an undisclosed principal, see 1 Parsons on Contracts, 6th ed. *55, note x ; *Fenly* v. *Stewart*, 5 Sandf. 101, 107, where the New York court, referring to the *dictum* of Parke, B., in *Higgins* v. *Senior*, 8 M. & W. 834, 844, that parol evidence, to charge an unnamed principal, does not contradict the written instrument, says, " Now, it requires very nice powers of discrimination, we think, to perceive how the introduction of a new party into the contract is not a contradiction of the written instrument, as well as the striking out of a party already in." *Petition dismissed.*

*B. N. & S. S. Lapham*, for plaintiffs.

*Charles Bradley*, for defendant.