## COMMONWEALTH COTTON OIL CO. et al. v. LESTER.

No. 20365. Opinion Filed Jan. 5, 1932.

Rehearing Denied March 29, 1932.

94 .

W. F. Speakman and Streeter Speakman, for plaintiffs in error.

G. R. Horner and C. C. Mount, for defendant in error.

CULLISON, J. This is an appeal from the district court of Creek county, Okla., wherein R. A. Lester, plaintiff below, in his individual capacity brought suit against the defendants, Commonwealth Cotton Oil Company, a corporation, J. H. Bellis, and R. B. Allen, defendants below, for damages for the wrongful conversion of property.

"Plaintiff's Petition.

"Comes now the plaintiff, and for a cause of action against the defendants and each of them, alleges and states:

"That on the 5th day of April, 1926, this plaintiff purchased the following described personal property, to wit: One 100 HP G. E. electric motor 3 phase, 60 cycle, 440 volt, 900 RPM, together with all attachments in connection with same, including base rails, pulley, starting box and all other connections which do not belong to the Electric Service Company, from the St. Mary's Oil Engine Company, as shown by a bill of sale attached hereto and, made a part hereof as exhibit 'A'; that this plaintiff is now and has been ever since the 5th day of April, 1926, the legal and equitable owner of said property.

"This plaintiff further alleges that, on the 5th day of April, 1926, the defendants had and held the possession of the above-described property at Oilton, Okla., for and on behalf of this plaintiff; that defendant Commonwealth Cotton Oil Company, a corporation, agreed to deliver f. o. b. Oilton, Okla., said property to this plaintiff, when requested; that this plaintiff was after the 5th day of April, 1926, entitled to the immediate possession of said property upon demand.

"This plaintiff further states that, on or about the 15th day of May, 1927, he demanded of each of the defendants that they deliver said property to this plaintiff's agent, but that said defendant and each of them, although they and each of them knew of this plaintiff's ownership and right to the immediate possession of said property, failed and refused and still fail and refuse to deliver said property to this plaintiff, but that said defendants and each of them wrongfully and illegally appropriated and converted the same to their own use; that said defendants and each of them, knowing of this plaintiff's title to said property and of his right to the immediate possession of the same, used and employed said property as their own, notwithstanding this plaintiff's demand for the same.

"This plaintiff further states that the reasonable value of said property at the date of its conversion on the 15th day of May, 1927, was $750. and that this plaintiff has been damaged in the amount of $750 by the defendants' failure and refusal to surrender possession of said property to this plaintiff.

"Wherefore, plaintiff prays judgment against the defendants and each of them by reason of the damages sustained by plaintiff, from the wrongful and illegal act of defendants in converting said property to their own use in the sum of $750, with interest thereon at the rate of 6% per annum from the 15th day of May, 1927, and for costs of this action." (R. 5, 6, 7.)

Defendant R. B. Allen files a separate answer, in which he alleges and states:

"Separate Answer of R. B. Allen.

"Comes now the defendant, R. B. Allen, and for his answer to the petition of plaintiff filed herein, alleges and states:

"(1) That he denies each, every and all allegations of plaintiff's petition.

"(2) That he never at any time entered into any contract with the plaintiff or with the St. Mary's Oil Engine Company.

"That he never at any time had in his possession any of the property mentioned in plaintiff's petition." (R. 40, 41.)

Defendant J. H. Bellis files his separate answer, in which he states:

"Separate Answer of J. H. Bellis.

"Comes now the defendant, J. H. Bellis, and for his answer to plaintiff's petition herein filed, denies each, every and all allegations therein contained in so far as the same relate to this defendant." (R. 28.)

Defendant Commonwealth Cotton Oil Company files its answer, in which it states in part:

"Answer of Defendant Commonwealth Cotton Oil Company.

"* * * That on the 1st day of April, 1926, this defendant made and entered into a contract with the St. Mary's Oil Engine Company for the purchase of a certain 3-cylinder, 105 HP Diesel Oil Engine, a copy of which contract is hereto attached, marked 'Exhibit A,' and made a part hereof.

"That in accordance with said contract the defendant was to pay the sum of $3,750 in cash and to exchange the 100 HP G. E. electric motor as described in petition of the plaintiff.

"Third: That said contract guaranteed said engine to be the same as new and further guaranteed that said engine will develop its rate of HP.

"That said engine was shipped in accordance with said contract and received by this defendant at Oilton, Okla.

"That said engine was installed according to contract and that this defendant paid said St. Mary's Oil Engine Company the sum of $3,000 upon the delivery of said engine.

"Defendant further answering states that said engine was not as guaranteed by the said St. Mary's Oil Engine Company.

"That said engine never did and never could be made to develop 100 HP.

"That the St. Mary's Oil Engine Company was informed of this fact.

"That they at all times refused and neglected to make such repairs on said engine as would enable the same to develop the HP necessary and the HP guaranteed in said contract. * * *

"Defendant further answering states that the electric motor engine (described) in plaintiff's petition was never delivered to the St. Mary's Oil Engine Company for the reason that said St. Mary's Oil Engine Company failed and neglected to carry out its part of the above-mentioned contract by shipping and delivering to defendant an engine in compliance with said contract.

"Fourth: That said electric motor engine was not the property of the St. Mary's Oil Engine Company. That the same was never delivered to them and they never had possession of the same for the reasons heretofore stated.

"That the same is now and always has been the property of the Commonwealth Cotton Oil Company, a corporation.

"Fifth: Defendant further answering states that the plaintiff, R. A. Lester, was at all times herein mentioned the agent of the St. Mary's Oil Engine Company.

"That he well knew at the time he claims to have purchased the 100 HP G. E. Electric Motor from the St. Mary's Engine Company on the 5th day of April, 1926, that said motor was not the property of the St. Mary's Engine Company but was at that time, the property of the Commonwealth Cotton Oil Company, a corporation. * * *" (R. 30-33, incl.)

The contract mentioned reads in part as follows:

"Proposal and Contract.
"Date: April 1st, 1926.
"To the Commonwealth Cotton Oil Co. (Hereinafter called the purchaser)
"Cushing, Okla.

"The St. Mary's Oil Engine Company, a Missouri corporation, of St. Charles, Mo., hereinafter called the company, proposes to furnish the purchaser, on the following terms and conditions, the machinery described herein.

"General Description:

"One (1) Unit, 3-cylinder, 105 HP. St. Mary's Diesel oil engine, with air pump, water circulating pump, two (2) air tanks and one (1) small oil tank, as described on page 8 of the catalog. It is understood that this engine has been used, but thoroughly overhauled and repainted and delivers the full rated horse power and guaranteed the same as a new engine.

"The main drive pulley will be furnished to give proper speed to the gin line shaft.

"The company will furnish erecting engineer to assist in grouting and starting engine free of charge.

"Structural Guarantee.

"The company guarantees that this engine will develop its rated horse power and will be of standard type in good order and free from ascertainable defects at the time of shipment. The company will furnish, free of charge, new parts to take the place of any parts found defective within one year from date of shipment of the engine, natural wear and breakage through carelessness or accidents excepted. Parts claimed to be defective are to be returned to the company, if requested, in which case the purchaser will pay for transportation. The company's responsibility is limited to claims made within one year from date of shipment of the engine, and in respect to such claims is limited to making requisite replacement and alteration in the parts not conforming to the guarantee or found defective as aforesaid. It is also agreed that any defect in material and workmanship of any one part shall not condemn the entire engine.

" 'The company will not be responsible for or subject to any action for damages or loss due to any failure or imperfections of the engine other than that above mentioned. The company reserves the right to make changes not shown in its bulletin and descriptive matter, for the improvement of its engines. Any apparatus other than manufactured by the company is sold under the guarantee of the manufacturers of such apparatus as furnished by them to the company. * * *

"Terms of Payment.

"Net cash three thousand seven hundred fifty ($3,750) dollars on delivery, and one (1) 100 HP. G. E. Electric Motor in good condition. Description of motor as follows: 3-phase, 60-cycle, 440 volt, 900 R. P. M., this being the same motor which has been used to operate a cotton gin at Oilton, Oklahoma; this, together with all attachments in connection with same, including base, rails, pulley, starting bos (sic) and all other regular connections which do not belong to the Electric Service Company, to be loaded f. o b. cars Oilton, Oklahoma, during the season of 1926 when requested. * * *

"General Conditions.

"All terms and provisions of the contract between the parties hereto are fully expressed herein, and it is mutually agreed and acknowledged that there are no promises, agreements, or undertakings, either verbal or written, outside of this formal instrument.

"No modification of this contract shall be binding upon either party, unless in writing accepted by the purchaser and approved by an executive officer of the company.

"This proposal is subject to immediate acceptance by the purchaser and approval thereafter by an executive officer of the company, after which it shall constitute a contract which cannot be canceled by the purchaser except upon payment to the company of 20 per cent. (20%) of the net purchase price above stated as liquidated damages.

"The St. Mary's Oil Engine Company,
"By R. A. Lester.
"Attest: ——————

"Acceptance.

"The St. Mary's Oil Engine Company:

"The foregoing proposal is hereby accepted and agreed to on this 3 day of April, 1926.
"Commonwealth Cotton Oil Co.,
"By J. H. Bellis, Pt.
"Attest: ——————

"Proposal and acceptance approved at St. Charles, Mo., on this 5th day of April, 1926.

"The St. Mary's Oil Engine Company. By (Sgd) J. D. Anderson, Pt." (R. 51-57, incl.)

A trial had on October 24, 1928. Plaintiff demurred to defendants' answer. Demurrer overruled by the court. Case tried to the court. At the conclusion of the hearing, the court entered the following judgment in favor of plaintiff:

"Journal Entry of Judgment.

"This cause coming on to be heard before the court this 24th day of October, 1928, upon regular assignment, and the plaintiff appearing by his attorneys, G. R. Horner and C. C. Mount, and the defendants appearing by their attorney, Walter Speakman; evidence having been introduced on behalf of the plaintiff and defendants in support of their contentions, and the court having heard the argument of counsel, and being fully advised in the premises, finds that, on the 5th day of April, 1926, the St. Mary's Oil Engine Company was the owner of the electric motor and the accessories belonging thereto which it had accepted from the Commonwealth Cotton Oil Company in exchange for the engine sold and had a right to sell the same on said date: that the bill of sale executed by the St. Mary's Oil Engine Company to the plaintiff, R. A. Lester, was valid and conveyed title to said electric motor and the accessories belonging thereto to said plaintiff; that it was the duty of the defendants to turn over and deliver to the plaintiff said motor and accessories when requested by said plaintiff, and that such request was made by the plaintiff and was refused by said defendants on the 15th day of May, 1927, and that said defendants refused to deliver said electric motor and accessories and by such refusal thereby converted the same to their own use; that thereafter said motor and accessories were destroyed by fire while in the custody and control of said defendants and said defendants became liable to the plaintiff for the value thereof; the court further finds that the value of said motor and said accessories at the time of their conversion was $750, and that the plaintiff is entitled to recover from said

defendants and each of them the sum of $750, with interest at the rate of six per cent. per annum from the 15th day of May, 1927, and costs expended in this action.

"It is, therefore, ordered, adjudged, and decreed that the plaintiff have judgment against the defendants and each of them for the sum of $750, with interest thereon at the rate of six per cent. per annum from the 15th day of May, 1927, and for the costs of this action.

"(Sgd.) Thos. S. Harris, Judge." (R. 142-143, 144.)

The defendants excepted to the judgment of the court and filed motion for a new trial. The court overrules defendants' motion for a new trial: Exceptions allowed.

Defendants give notice of their intention to appeal to the Supreme Court. The case is now before this court for adjudication.

For convenience, parties will be referred to as they appeared below. St. Mary's Oil Engine Company will be referred to as "engine company," but it is not a party to this action. It will be observed the contracting parties in this action are St. Mary's Oil Engine Company and Commonwealth Cotton Oil Company.

The proposal and contract on the part of St. Mary's Oil Engine Company was signed by R. A. Lester, plaintiff herein.

The proposal and contract on the part of the Commonwealth Cotton Oil Company was executed and accepted by J. H. Bellis, president of said company, one of the defendants herein.

The defendants, plaintiffs in error, enumerate four (4) assignments of error, but suggest the assignments may be argued and included under one assignment, viz.:

"The judgment of the court in this case is not supported by the evidence, but is contrary thereto, and is likewise contrary to the law of the case."

We have carefully read and reread the record in this cause, including the entire testimony.

Plaintiff alleges in his petition that he is the owner of the property in dispute; that defendants and each of them wrongfully and illegally converted and appropriated said property to their own use.

There seems to be no contention as to the correct description of the property involved.

The contention between plaintiff and defendants is based on what they call a proposal and contract, executed by and between the Commonwealth Cotton Oil Company, one of the defendants herein, and St. Mary's Oil Engine Company, and a certain bill of sale executed by the engine company to plaintiff.

The proposal and contract, which follows (and which will be referred to hereafter as "contract,") clearly shows that the engine company proposed and agreed to sell to the cotton company, defendants herein, a 105 horse-power engine described in the contract, supra. The above mentioned 105 horse-power engine is not the motor or properly claimed by plaintiff and described in plaintiff's petition. The said 105 horse-power engine was sold by the engine company to the cotton company, defendant herein, on a guaranty, which guaranty is fully set out in said contract.

A dispute arose between the engine company and the cotton company in which it is contended by defendant oil company that the machinery, a 105 horse-power St. Mary's Deisel oil engine, was not such an engine as warranted, and would not do the work for which it was sold.

It should not be overlooked, the engine company is not a party to this action.

The contention between the engine company and cotton company, defendant herein, regarding the breach of contract of warranty is not before this court for adjudication.

The contract, supra, shows that defendant cotton company was to pay the engine company $3,500 in cash for the Deisel engine and in addition thereto turn over to the engine company the following described property:

"One 100 HP G. E. electric motor in good condition. Description of motor as follows: 3-dash phase, 60-cycle, 440 volt, 900 RPM,' this being the same motor which has been used to operate a cotton gin at Oilton, Okla.; This, together with all attachments in connection with same, including base, rails, pulley, starting bos (sic) and all other regular connections which do not belong to the electric service company. To be loaded f. o. b. cars, Oilton, Okla., during the season of 1926 when requested."

The above-described property is the property in dispute and involved in the plaintiff's action for damages.

It will be observed the engine company executed the bill of sale, supra, to the plaintiff herein. The defendant, the cotton company, had nothing to do with the execution or the giving of the bill of sale to plaintiff. The bill of sale does rehearse the fact:

"The above motor was taken in on trade on a deal for a 105 horse-power St. Mary's Deisel oil engine with Commonwealth Cotton Oil Company."

We do not think the above statement shows any contractual relations between the plaintiff and defendants in the instant case.

The statement above merely shows that St. Mary's Oil Engine Company contracted to sell to the defendant cotton company the property in dispute, and if the engine company succeeded in consummating the deal they were contemplating making with defendants, the engine company would accept the property in dispute as part pay.

The bill of sale further provides:

"This motor to be loaded f. o. b. cars, Oilton, Okla., by the Commonwealth Cotton Oil Company during the season of 1926 when requested."

We think the above statement is an admission on the part of plaintiff and the engine company that the property in question was the property of the defendant cotton company; that said property was in the possession of the cotton company; that St. Mary's Engine Company or this plaintiff could not have or acquire any interest therein until the executory contract between St. Mary's Company and the defendant cotton company was consummated, accepted, and approved to the entire satisfaction of the contracting parties.

The above provision of the contract is a further admission on the part of the plaintiff and engine company that the property in question was the property of, and in the possession of, the defendants and that the defendants had no knowledge or intimation that the plaintiff and St. Mary's Engine Company had a deal or understanding between them at the time said contract and bill of sale was executed that this plaintiff would become the owner of the property in question if defendant and St. Mary's Engine Company should succeed in consummating a deal.

The contract in the instant case further provides (R.-52):

"The (engine) company guarantees that this (Deisel) engine will develop its rated horse-power and will be of standard type in good order and free from ascertainable defects at the time of shipment. * * *" (Contract, Record, page 52.)

"It is understood that this engine has been used, but thoroughly overhauled and repainted and delivers the full rated horse-power and guaranteed the same as a new engine." (Contract, Record, page 52.)

It will be observed the St. Mary's Oil Engine Company in the proposal and sales contract, supra, represented and guaranteed to the defendant cotton oil company that said engine which they were selling to the cotton company was as good as new, and in good order, and free from ascertainable defects, and would develop 105 horse-power.

There is not a word in the bill of sale conveying the idea that defendant cotton company ever sold or agreed to sell the property in question to this plaintiff.

The contract between the engine company and this defendant shows that the engine company sold this defendant an engine which was represented to be as good as new; that defendant was to pay the engine company $3,750 in cash and turn over its old motor to the engine company, but the contract does not even tend to show that this plaintiff had any right or interest in or to said engine, the property in question.

The record shows plaintiff brings this action in his individual capacity. Any interest he might claim to have in this property would in law and in fact be the interest of his principal. Plaintiff could not have or acquire any interest in the property until his principal had fully complied with the terms of the contract executed by and between it and the defendant cotton company.

If the proposal and contract of purchase or sale existing between the engine company and this defendant, or defendants, has been breached, the action must be brought by the contracting party who feels himself aggrieved and not by this plaintiff or any other person in his individual capacity.

### Law Applicable.

"One who seeks to take advantage of a contract made for his benefit by another must take it subject to all legal defenses and inherent equities arising out of the contract, such as the fraud of the party procuring it, the nonperformance of conditions, or the right to a set-off, unless the element of estoppel has entered. It is not a defense to an action on a contract made for the benefit of another that such still retains his original remedy against one of the parties." 13 C. J. 699.

"There is no principle better settled at common law than that an action on a contract, either express or implied, must be brought in the name of the party in whom the legal interest in such contract is vested. But it is now provided by statute in many jurisdictions that actions shall be brought in the names of the real parties in interest, the real party in interest being the person legally entitled to the proceeds of the claim in litigation. Since the obligation and duty arising out of a contract are due only to those with whom it is made, an action for the breach thereof can as a rule be brought only by one who is a party to it; nor can one not a party to the contract who has

been injured by a breach thereof derive any benefit therefrom. The reason for the rule that privity of contract is necessary to an action founded on a breach of contract is that otherwise a man's responsibility for not carrying out his agreement with another would have no limit; there would be no bounds to actions if the ill effect of the failure of a man to perform his agreement could be followed down the chain of results to the final effect. Another reason is that if third persons can acquire a right in the contract in the nature of a duty to have it performed as contracted for, the parties will be deprived of control over their own contract and the right to modify or waive its provisions. This principle, it has been held, prevents one not a member to a sale of goods, but who purchases them from the purchaser of a remote purchaser and sustains damage because of defects therein, from maintaining an action against the original vendor. Likewise, one who is injured while using such an article purchased by another cannot maintain an action on the contract; nor can a third person recover from the seller for poor work done for him by the buyer with a purchased machine. * * *" 13 C. J., section 805, Contracts.

It is a well-settled principle of law in nearly all jurisdictions:

"Where two persons make a contract in which one of them promises to confer benefits on a third person, the latter cannot sue on the contract, at law or in equity, for the money or other benefit which it is promised that he shall receive." 13 C. J., section 808.

See Ann Arbor Bd. of Commerce v. Security Trust Co., 225 Fed. 454; St. Louis Second Nat. Bank v. Missouri Grand Lodge F. & A. M., 98 U. S. 123, 25 L. Ed. 75, and many cases therein cited.

In Ottawa Bank v. Hood, 42 Can. S. C. 231, the court in that case said:

"The reason is that it is held essential that the consideration shall move from plaintiff; there must be privity between the parties in order to support an action on the contract."

In the case of Price v. Easton, 4 B. & Ad. 433 (English case), five judges sitting en banc all reached the conclusion above stated, but based their decision on different grounds:

Denman, C. J., observed that:

"The declaration could not be supported, as it did not show any consideration for the promise moving from plaintiff to defendant."

Littledale, J., observed that:

"No privity was shown between plaintiff and defendant."

Taunton, J., said that:

"It was consistent with all the matter alleged in the declaration that plaintiff might have been entirely ignorant of the arrangement between the real contracting parties."

Patterson, J., based his opinion on the ground that:

"There was no promise to plaintiff alleged."

"Where a person sues on a contract to which he is not a party, but which he alleges has been made for his benefit, he must set forth facts clearly showing the existence of his right to sue." 13 C. J. 715.

If it could be said that plaintiff in the instant case is a third party, which we do not concede, and that the contract between the engine company and the defendant cotton company was made for his benefit, the plaintiff herein could not acquire any interest in the property in dispute until the deal between the contracting parties was fully carried out or consummated.

Section 799: 5: Contract for Benefit of Third Person:

"One who seeks to take advantage of a contract made for his benefit by another must take it subject to all legal defenses and inherent equities arising out of the contract, such as the fraud of the party procuring it, the nonperformance of conditions, or the right to a set-off, unless the element of estoppel has entered. It is not a defense to an action on a contract made for the benefit of another that such other still retains his original remedy against one of the parties." 13 C. J. 699.

Neither can it be said that the contract between the engine company and the defendant cotton company was made for the benefit of this plaintiff. He is not one of the contracting parties. The contract set out in the instant case does not disclose any interest whatsoever in plaintiff.

Every promise and obligation set out in the contract relating to the interests of the St. Mary's Engine Company is made by and in the interest of said company. Yet we are confronted with the unprecedented condition of a third person, in his individual capacity, attempting to enforce the provisions of a contract existing in favor of other persons to the contract in which the third person has no interest and does not make the contracting party whom he seeks to represent a party to the action.

It will be observed the contracting parties to the contract introduced in evidence, which contract is the basis of this action, used the word "guarantees," meaning a warranty.

The contract introduced in evidence may in law and fact be denominated a warranty contract.

In some instances and in some cases, courts have very properly found a distinction between a contract of guaranty and one of warranty.

"Guaranty" defined:

"A guaranty is a collateral undertaking by one person to be answerable for the payment of some debt or the performance of some duty or contract for another person who stands first bound to pay or perform. * * *" 20 Cyc. 1397.

"Originally the words 'warranty' and 'guaranty' were identical in signification and effect, and at the present time they are sometimes used interchangeably and with the same effect * * * in that each is alike an undertaking by one party to another to indemnify or make good the party assured against some possible default or defect. * * *" 28 C. J. 894.

We think the contract in the instant case may be properly denominated a contract in warranty or a contract containing a warranty.

"Warranty" defined:

" 'Warranty' is an undertaking that the title, quality, or quantity of the subject-matter of the contract is what it has been represented to be, and relates to some agreement made ordinarily by the party who makes the warranty," 28 Cyc. 894.

"Guaranty" distinguished from "warranty:"

"Guaranty is distinguished from warranty, although they have many corresponding features. They are both collateral contracts. But, as heretofore shown, guaranty is an undertaking to answer for another's liability, while warranty is an undertaking that a certain fact regarding the subject of the contract is what it has been represented to be, and relates to some agreement made ordinarily by the party who makes the warranty. * * *" 20 Cyc. 1403, 1404.

Example:

"The words 'with guarantee against leakage,' in an accepted order for a certain number of barrels of oil, in effect, state that the barrels are warranted against leakage; 'guarantee' being used synonymously with warranty. Gay Oil Co. v. Roach (Ark.) 125 S. W. 122. * * *" (4 Words & Phrases (2d) 1244).

Since "warranty" and "guaranty" may be identical in signification and effect, and may be used interchangeably, we will use them in like manner.

Special guaranties:

"A special guaranty is one on (in) which the guarantor is responsible only to the person addressed in the writing itself." 20 Cyc. 1399.

The parties defined:

"The one executing the guaranty is called the guarantor; * * * and the person whose debt, conduct, or contract is guaranteed is shown as the principal or principal debtor." 20 Cyc. 1400.

In the instant case, the engine company is the guarantor and the defendant cotton company is the debtor.

Conditional guaranties:

"Where the guaranty is not enforceable immediately upon the default of the principal debtor but the guarantee is obliged to take some steps to fix the liability under the guaranty, such as diligently prosecuting the claim against the principal debtor, the guarantee is a conditional one." 20 Cyc. 1398.

Under the authorities cited, it is obvious the plaintiff herein could not maintain this action until the engine company takes some steps to fix the liability, under the contract, against the debtor, the cotton company, defendant herein.

"In determining the extent of liability under a contract of guaranty the court may consider first, who the parties were, second, in what position they were, and third, what the subject-matter of the agreement was. No strained construction should be resorted to to defeat the obvious intent of the parties." 20 Cyc. 1435.

The cotton company, defendant herein, contends that the engine company breached the terms of the contract existing between them, and for that reason the contract was never fully consummated, and no action at law was ever brought by either party against the other to enforce the terms of said contract.

The defendant cotton company made a very liberal payment on the Deisel engine soon after the engine was shipped and placed in position. The engine failed to deliver horse-power sufficient to run defendant's cotton gin. The engine company, by its mechanics, did much work at various times on the engine, but were never able to make it do the work it was guaranteed to do.

The defendant made no further payments on the Deisel engine and continued to hold possession of the electric motor until the engine and electric motor, together with all attachments thereunto belonging and the entire gin plant, were destroyed by fire.

The defendant cotton company and their employees testify they never knew plaintiff claimed any interest in the electric motor until he brought this suit. Defendant further testifies he never made any agreement or had any understanding with plaintiff that he would turn over the electric motor or any

parts thereunto belonging, to the plaintiff; that plaintiff never had possession of the electric motor or any of the parts described in plaintiff's petition.

We are of the opinion, and hold: That the evidence in the case overwhelmingly sustains the contention of defendant, the Commonwealth Cotton Oil Company, and the trial court erred in rendering judgment for plaintiff.

Plaintiff further contends that he has some interest in the property in dispute by virtue of a bill of sale given to him by the engine company.

"A guaranty may be so drawn as to be personal and so as to have force and effect only as to the person to whom it is given and so not transferable or assignable to any other person. And in cases of special guaranties not connected with negotiable instruments no person except the one specified can secure any advantage from the guaranty, and it is nontransferable till after a breach, when a right of action has accrued thereon. But while this is so, in order thus to limit a guaranty, the language used should be plain and the intention of the parties should be certain." 20 Cyc. 1435.

The record shows that the bill of sale was the result of a transaction wholly between the engine company and the plaintiff herein; that the defendant company was not a party to said transaction and knew nothing of the making or delivery of said bill of sale to the plaintiff until after bringing of this action.

We are of the opinion, and hold: That the plaintiff did not and could not have a greater interest (rights) to the property in question than the engine company, and could not and did not acquire any interest in the property by virtue of the bill of sale. And it is very plain to us that the engine company could lay no claim to the property in question until it fully complied with the conditions of the guarantee.

The judgment of the trial court is reversed, with directions to dismiss said action.

HEFNER, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. RILEY, J., dissents. LESTER, C. J., not participating. CLARK, V. C. J., absent.

---

RILEY, J. (dissenting). This is an action in conversion. The ginnery bought a Deisel engine, paid down some money thereon, and traded in the engine in controversy and agreed in writing to deliver it to the order of the seller. The seller, by bill of sale to Lester, assigned its right to possession of the property in controversy. Lester made demand for delivery. The ginnery declined to perform its obligation, seeking, it says now, to hold the property for a warranty upon its purchased Deisel engine. After delivery, the ginnery burned, destroying the property in controversy. Lester obtained judgment for the value of the engine now destroyed, but formerly so held by the ginnery. In the trial court a jury was waived.

The rule of law is, if there is any evidence to sustain the judgment in a law action, it will not be disturbed on appeal. The judgment is sustainable, and I think should be sustained upon the evidence.