**FLYING J, INC., a Utah corporation, Appellant (Plaintiff),**

v.

**Elvin L. BOOTH, Jacqueline Booth and Joan R. Gillett, Appellees (Defendants).**

No. 88–265.

Supreme Court of Wyoming.

May 8, 1989.

Russell M. Blood of Warnick & Blood, P.C., Casper, for appellant.

Ronald A. Kastanek, Casper, for appellees.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

This vendor-creditor suit by Flying J, Inc., appellant, pursued an assigned written guaranty executed by Elvin L. and Jacqueline Booth, appellees, in favor of assignor, Husky Oil Company (Husky).[1] Cross motions for summary judgment were filed. The district court granted the appellees' motion finding the instrument to be a non-assignable "special guaranty" precluding present enforcement as a matter of law.

Appellant presents as issues:

1. Does the Appellant, as successor in interest to the original holder of the guaranty at issue, have the legal right to enforce the guaranty.

2. Did the trial court err in granting the Defendants' motion for summary judgment and denying the Plaintiff's motion for summary judgment.

We affirm.

## I. FACTS

The initiating transaction that engendered this dispute occurred in 1974. At that time, appellees owned one-half of the outstanding shares of Booth Livestock, Inc. (BL), which operated the Husky Super Stop, a truck stop in Mills, Wyoming. Before Husky would extend credit to BL on purchases of diesel fuel and other products necessary to the operation of that business, Husky required appellees personally to guarantee the payment of any obligations that BL might incur with respect to those purchases (Booth guaranty). On December 12, 1974, appellees executed the guaranty, which provided:

THE UNDERSIGNED, jointly and severally (herein called Guarantor, whether one or more) do hereby guarantee and agree to pay any and all indebtedness of any nature whatsoever incurred by *BOOTH LIVESTOCK, INC.* (herein called Debtor) a corporation * * * whose address is below, unto HUSKY OIL COMPANY OF DELAWARE (herein called Husky).

The guaranty herein is given in consideration of future extension of credit to Debtor by Husky. This guaranty covers any indebtedness incurred by Debtor prior to or subsequent to the date hereof. Guarantor covenants and agrees that this guaranty is absolute, unconditional, and unlimited as to such indebtedness and any charges or interest thereon, and any costs of collection, including attorneys' fees and court costs.

This guaranty shall continue in full force and effect until written notice of its discontinuance shall have been served upon Husky by certified mail and shall continue until any and all indebtedness as may then be owed by Debtor to Husky shall be paid.

In the event any such indebtedness is not paid when due, Husky may resort to

1. More precisely, the ownership is traced from:

1. May 31, 1984, Husky, the original owner, assigned its refining, transportation, and marketing assets (including the Booth guaranty) to RMT Properties, Inc. (RMT).

2. December 31, 1985, all the outstanding stock of RMT was acquired by Big West Oil Company (Big West). These two companies merged, designating RMT as the surviving corporation but taking the name of Big West.

3. January 2, 1986, Big West, a wholly owned subsidiary of Flying J, Inc., assigned its interests (including the Booth guaranty) to Flying J, Inc.

this guaranty without first having recourse against Debtor or to any security given to secure said indebtedness; and Guarantor agrees to pay in addition to the indebtedness hereby guaranteed, any charges and interest thereon, and reasonable costs of collection hereunder including attorneys' fees. Until all indebtedness of Debtor is paid in full to Husky, Guarantor shall have no rights of subrogation, nor any right to enforce any remedy which Husky may have against Debtor.

This guaranty is binding upon Guarantor and his heirs, executors, administrators and personal representatives, jointly and severally. In the event of death of Guarantor, or any of them, the obligation of the deceased shall continue against his estate as to all indebtedness of Debtor incurred prior to the time Husky received written notice of such death; and this guaranty shall nevertheless continue as the obligation of any surviving Guarantor. [Emphasis in original.]

Pursuant to a credit sales agreement and guaranty, Husky apparently supplied BL with products necessary to operate the truck stop by a sales arrangement that continued for nearly ten years. In 1983, appellees sold their one-half interest in BL to Paul and Joan Gillett (Gillett), who already owned the remaining interest and had operated the truck stop for the corporation for a number of years. The Gilletts, as the directors, officers, and now only shareholders of BL, were allowed to continue to purchase products on credit from both Husky and later RMT based on their personal guarantees signed on October 8, 1984. Unfortunately, in early 1985, BL defaulted on payments due to RMT for product purchases made in December 1984 and January 1985 which created the account balance of over $27,000 from which this lawsuit is derived.

Appellant originally filed this suit on September 16, 1987 against appellees and Gilletts. Although the summonses were initially issued in September, the appellees' summonses were never actually served until January 6, 1988 which occurred after it was discovered that Paul Gillett had died and Joan Gillett had filed bankruptcy.

## II. DISCUSSION

### A. Denial of Appellant's Motion for Summary Judgment.

We address the issues in converse order mindful that this case was decided by summary judgment. First, appellant asks us to find error in the denial of its reciprocal motion for summary judgment. However, it is well-established that the denial of a motion for summary judgment is not a final appealable order. *Thompson v. State ex rel. Wyoming Workers' Compensation Division,* 768 P.2d 600 (Wyo.1989); *St. Paul Fire and Marine Ins. Co. v. Albany County School Dist. No. 1,* 763 P.2d 1255 (Wyo.1988); *Kimbley v. City of Green River,* 663 P.2d 871 (Wyo.1983). Therefore, there was no error in the district court's denial of appellant's summary judgment motion.

### B. Limiting Liability From Special Guaranty.

Second, appellant launches a two-pronged attack with initial contention that summary judgment was improperly granted against it because the district court erred in holding this instrument to be an unassignable special guaranty. Alternatively, appellant then argues that even if we agree that this is a special guaranty, we should follow the states that allow a modification of the common law to permit assignment and enforcement of any special guaranty where there has been no material change in the obligation to the guarantor. We disagree with appellant on both bases.

■■■ A general guaranty is drawn to address all potential creditors in general such as "to whom it may concern," and effectively promises all those creditors that the principal's obligations will be performed. See Annotation, *Validity, Effect, and Enforceability of General Guaranty Not Naming Specific Creditors,* 75 A.L.R. 277 (1931). By limitation, a special guaranty is drawn with reference to only one creditor such as a particular person, firm,

or corporation. See *Niederer v. Ferreira,* 189 Cal.App.3d 1485, 234 Cal.Rptr. 779, 788 (1987); *Burkhardt v. Bank of America Nat. Trust & Savings Ass'n,* 127 Colo. 251, 256 P.2d 234 (1953); *Brunswick Corp. v. Creel,* 471 So.2d 617 (Fla.App.1985); A. Stearns, The Law of Suretyship, §§ 4.3, 4.4 (5th ed. 1951); 38 Am.Jur.2d *Guaranty* § 20 (1968); and 38 C.J.S. *Guaranty* § 41 (1943). The appellees' guaranty in the instant case specifically refers to only one creditor, Husky. Therefore, the district court did not err in finding a special guaranty intent by the parties.

■ Our second inquiry is assignability. At common law, a general guaranty is assignable or transferable, but a special guaranty is not.[2] See *Brunswick Corp.,* 471 So.2d at 618; *Greene County v. National Bank of Snow Hill,* 193 N.C. 524, 137 S.E. 593 (1927); *King v. Batterson,* 13 R.I. 117, 119 (1879); and 38 Am.Jur.2d, supra, § 35. Cf. *Sinclair Marketing, Inc. v. Siepert,* 107 Idaho 1000, 695 P.2d 385, 388 (1985), recognizing the common law distinction but finding that even with a special guaranty, "the parties may have intended it to be assignable within certain limits." See also Annotation, *Who May Enforce Guaranty,* 41 A.L.R.2d 1213 (1955). The rationale supporting the common law rule is that when a written instrument names only a specific creditor, there is no demonstration of an intent to make the instrument enforceable by someone not named within it.

The question of assignability depends largely upon principles developed under contract law. Generally, all contract rights which are not "personal" in nature may be assigned. Williston on Contracts (3d ed.) § 412. When extending an offer of guaranty, the guarantor has relied upon the specific circumstances and terms of the agreement between the debtor and the creditor, and their respective financial positions. On this basis the law has generally held that a guaranty contract with a specific creditor is "personal" to that creditor and may not be assigned.

*Sinclair Marketing, Inc.,* 695 P.2d at 387.

These general principles have long been reflected in the decisions of this court. We have held that a guarantor is bound only by the strict letter and precise terms of his contract. *Blyth v. Pinkerton,* 10 Wyo. 135, 67 P. 619, 623 (1902). In that case, we cautioned that courts should not unreasonably extend a guarantor's obligation beyond the terms of that agreement without some clear manifestation of intent to the contrary because the agreement is presumed to reflect the guarantor's regard for his own interests. Id., 67 P. at 623. As a parallel consideration, we have observed that a creditor who wishes to secure and enforce a broad guaranty of his obligor's performance, has the responsibility to make the scope of that guaranty clear to the prospective guarantor. *McKenzie v. Neale Construction Co.,* 75 Wyo. 175, 294 P.2d 355, 359 (1956). Thus, our past cases have implicitly recognized an obligation on the part of creditors to clearly set forth any expansive intent within the expressed terms of any guaranty.

Essentially, appellant argues that appellees' guaranty is ambiguous with respect to assignability because the instrument purports to be "absolute, unconditional, and

**2.** Although at common law a special guaranty is not assignable, once a right of action on the special guaranty had arisen and become fixed it could be assignable. *Burkhardt,* 256 P.2d at 236; *Anchor Inv. Co. v. Kirkpatrick,* 59 Minn. 378, 61 N.W. 29, 30 (1894) (special guaranty is assignable after default and when cause of action arose); *Evansville Nat'l Bank v. Kaufmann,* 93 N.Y. 273 (1883); *Com. Cotton Oil Co. v. Lester,* 156 Okl. 93, 9 P.2d 738, 746 (1932) (after breach special guaranty could be assignable); *Tidioute Sav. Bank v. Libbey,* 101 Wis. 193, 77 N.W. 182, 183 (1898); A. Stearns, supra, § 4.4.

In *Hecht v. Acme Coal Co.,* 19 Wyo. 10, 113 P. 786, reh'g denied, 117 P. 132 (Wyo.1911), this court drew a distinction between an unconditional guaranty of performance and collection concerning saloon rent. In that case, the guaranty specifically allowed the lessor to assign the performance guaranty which became fixed and assignable upon the lessee's failure to perform. *Hecht,* 113 P. at 786, 788. However, in the instant case, there is no allegation that this special guaranty became fixed so that it could be assigned. Conversely, the account balance developed after assignment of the guaranty to the new vendor as present appellant.

unlimited," and contains no provision which expressly forbids assignments. Regarding the absence of terms precluding assignments, we remind appellant that the failure of a contract to include terms which it seeks to enforce does not render the contract ambiguous. See *Hensley v. Williams,* 726 P.2d 90 (Wyo.1986). Furthermore, a surety contract is construed by the same rules used to construe other contracts. *Moorcroft State Bank v. Morel,* 701 P.2d 1159, 1161 (Wyo.1985); *Wyoming Machinery Co. v. U.S. Fidelity & Guaranty Co.,* 614 P.2d 716, 719 (Wyo.1980); *Snow v. Duxstad,* 23 Wyo. 82, 147 P. 174, 184 (1915); *Blyth,* 67 P. at 624; Restatement of Security § 88 (1941). The language of a guaranty must be read in its plain and ordinary sense, in light of the surrounding circumstances, the situation of the parties, the object of the guaranty, and their intended contractual objective. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Studer Tractor & Equipment Co.,* 527 P.2d 820, 826 (Wyo.1974); *Snow,* 147 P. at 184; *Blyth,* 67 P. at 624. However, as in the case of other contracts where the language of a guaranty contract is plain and unequivocal, no ambiguity arises and the court may construe the contract as a matter of law on a motion for summary judgment. *Dudley v. East Ridge Development Co.,* 694 P.2d 113, 117 (Wyo.1985). See also *Nelson v. Nelson,* 740 P.2d 939, 940 (Wyo.1987); *Ricci v. New Hampshire Ins. Co.,* 721 P.2d 1081, 1085 (Wyo.1986); *Cordova v. Gosar,* 719 P.2d 625 (Wyo.1986); and *Kuehne v. Samedan Oil Corp.,* 626 P.2d 1035, 1039 (Wyo.1981).

> [S]ummary judgment is an inappropriate means of construing a contract *only* when the contract is ambiguous on its face and the extrinsic evidence, admissible as a result of said ambiguity, raises a real issue of fact requiring resolution at trial.

*Madison v. Marlatt,* 619 P.2d 708, 714 (Wyo.1980) (emphasis added).

There is nothing ambiguous about the guaranty executed by appellees. The guaranty was drafted and given "in consideration of future extension of credit to Debtor by Husky," the sole and specific obligee. That language expressly and clearly indicates that the relationship and intent of these parties was rooted in appellees' reliance on Husky's ability and willingness to perform its contract with BL. A guaranty expressly given in consideration of the extension of future credit by a specific individual is generally held to be nontransferable. This is expressly the situation here where future sales were anticipated. Even where obligee sells his business and his successors continue to extend credit, the guarantor is liable only for debts resulting which accrued prior to the transfer of the original obligee's assets but not after. See *Lee v. Rubin,* 117 So.2d 230 (Fla.App.1960); *Kelly–Springfield Tire Co. v. Hamilton,* 230 Mo.App. 430, 91 S.W.2d 193 (1936); A. Stearns, supra, § 4.4; and 38 Am.Jur.2d, supra, § 35. Unquestionably, in the instant case, all the disputed debts occurred after appellees transferred BL wholly to the Gilletts and discontinued their participation, which status was recognized by re-execution of a new guaranty by the successors.

Appellant fares no better when it argues that the parties intended to make this guaranty assignable by inclusion of the declaration that "this guaranty is absolute, unconditional, and unlimited as to *such indebtedness*." [Emphasis added.] That language clearly disavows any conditions upon Husky's exercise of its rights to collect debts under the guaranty, and similarly disavows any limitations upon the amount of debt covered. However, it clearly does not disclaim all limitations with respect to the identity of appellees' prospective creditors. Moreover, the parties, in the final paragraph of the instrument, clearly and unambiguously agreed that the obligations of the guaranty would run to certain successors of the guarantors. No corresponding provision ensures that the benefits of appellees' promise would run to Husky's successors. It strains credulity to contend that potential ambiguities relative to one party's rights could be so easily avoided, yet to also contend that, within this brief and simply stated document, the rights of the other party were unaccountably con-

demned to obscurity. The district court correctly found that the document unambiguously gave Husky, and not its assignees, a special guaranty.

At bottom line, appellant asks us to join those courts which permit the assignment of special guaranties in the absence of actual prejudice to the guarantor. While some courts may have modified the common law approach,[3] we decline to follow them. In *Security State Bank of Basin v. Newton*, 707 P.2d 173, 175 (Wyo.1985), we clearly espoused the common law rule of strict construction of guaranties:

> A guarantor's liability cannot be extended by construction or by implication beyond the express terms of the guaranty. *Farmers State Bank v. Doering*, 80 Ill.App.3d 959 [36 Ill.Dec. 285] 400 N.E.2d 705 (1980); *Trego WaKeeney State Bank v. Maier*, 214 Kan. 169, 519 P.2d 743 (1974). Unless a given transaction is expressly included within the guaranty, the guarantor is not liable upon the debtor's default. *National Bank of Commerce of Kansas City, Mo. v. Rockefeller*, 174 F. 22 (8th Cir.1909). A guarantor is liable only for the payment of debts expressly guaranteed.

Appellant provides no compelling reason for us to abandon a position that has existed unchanged in nearly eighty-seven years in Wyoming jurisprudence since *Blyth*, 67 P. 619. Consequently, we determine that lacking any genuine issue of material fact or error of law, the district court did not err in granting summary judgment.[4]

Affirmed.

---

**3.** See generally Annotation, *Change in Name, Location, Composition, or Structure of Obligor Commercial Enterprise Subsequent to Execution of Guaranty or Surety Agreement as Affecting Liability of Guarantor or Surety to the Obligee*, 69 A.L.R.3d 567 (1976).

**4.** A further basis is suggested to affirm the summary judgment by application of estoppel by substitution of subsequent guaranty. We deem it unnecessary to pursue that alternative concept.