MID–AMERICA CORPORATION, a corporation, formerly Selected Investment Corporation, Plaintiff in Error,

v.

C. E. MILLER, Defendant in Error.

No. 39486.

Supreme Court of Oklahoma.

May 29, 1962.

Green & Feldman, W. E. Green, Raymond G. Feldman, Wm. S. Hall, George A. Farrar, Tulsa, W. R. Withington, George H. Shirk, James E. Work, and Wm. J. Robinson, Oklahoma City, for plaintiff in error.

Houston, Klein & Davidson, Jack Fine, W. R. Thixton, Jr., Tulsa, for defendant in error.

IRWIN, Justice.

Between December 23, 1957, and March 11, 1958, nine promissory notes in varying amounts were executed and signed "National Marine Plastics Co., by C. E. Miller" in favor of Selected Investment Corporation. Each of these notes were secured by chattel mortgages covering certain boats in which the serial numbers were listed. The mortgages listed "Claude E. Miller d/b/a National Marine Plastics Co.", as mortgagor, and were signed "National Marine Plastics Co.", by "C. E. Miller."

The notes were not paid at maturity and the Trustee in Bankruptcy of Selected Investment Corporation brought an action to recover a personal judgment against C. E. Miller. After transfer of all the assets of Selected Investment Corporation to Mid-America Corporation, Mid-America was substituted as party plaintiff.

On trial of the issues judgment was in favor of the defendant. Plaintiff perfected its appeal from the judgment overruling its motion for a new trial. The parties will be referred to as they appeared in the trial court.

### PLEADINGS

Plaintiff alleged the execution and delivery of the various notes; that said notes had not been paid; that C. E. Miller was personally liable; that each of the notes were executed by C. E. Miller individually, d/b/a National Marine Plastics Co., and so represented to plaintiff; and that the intangible taxes had been paid.

In addition to a general denial, the defendant in his amended answer alleged he is not personally liable for the payment of the notes as he signed said notes for and on behalf of the National Marine Plastics Company in his capacity as President of National Marine Plastics, a division of Miller Furniture Inc.; that in the alternative, if it is found that he is personally liable on the notes there has been a total failure of consideration in that he did not receive any of the proceeds of the alleged loans. Defendant specifically denied he represented to plaintiff that he would guarantee payment of the notes.

### EVIDENCE

The parties stipulated as to the total amount due on the notes, and that the notes provided for attorney fees; that the payment of the intangible tax could be established by parol testimony; that the Mid-America Corporation is the real party in interest and that National Marine Plastics Company was incorporated July 1, 1958.

Leon Walden, manager and agent of plaintiff and its predecessors identified the nine notes and chattel mortgages. The notes were signed "National Marine Plastics Co., by C. E. Miller", with slight variations. Each chattel mortgage provided, inter alia, "This mortgage made * * * by Claude E. Miller d/b/a National Marine Plastics Company * * *", and were signed substantially as were the notes. On the back of each mortgage appears an affidavit, the pertinent portion of which is as follows:

"Claude E. Miller being duly sworn says he is the lawful owner of the property described and included in the within instrument of writing, that—he—has full power to sell or mortgage the same and give clear title * * *".

and each was signed "National Marine Plastics Company, by C. E. Miller" and sworn to before a Notary Public. Walden also identified the bond which was given in compliance with the requirement of Selected Investment Corp. This bond listed Claude E. Miller as principal and was signed by Claude E. Miller as principal.

Walden further testified that C. E. Miller submitted him his financial statement and that of his wife as individuals and told him that any credit would be extended to him (C. E. Miller) individually; that Mr. Miller told him that he was the sole owner of National Marine Plastics; and that all intangible taxes had been paid.

Arnold B. Cheatham testified that he is assistant cashier of the Fourth National

Bank. He produced and identified an "Authorization by Sole Owner". This authorization was addressed to the Fourth National Bank and stated that "the undersigned, doing business as National Marine Plastics have heretofore opened, or are about to open an account with you"; it stated who was authorized to issue or endorse checks, and the same was signed by C. E. Miller, sole owner.

In the trial court's findings of fact it found that " * * * at the time of the execution of these notes by National Marine Plastics that the said National Marine Plastics was an operating division of Miller Furniture, Incorporated. It is further found that the defendant in this case, C. E. Miller did not represent to the plaintiff or its predecessor, Selected Investment, that National Marine Plastics was a sole proprietorship, owned by him individually. C. E. Miller, as president of Miller Furniture, Incorporated, had the authority to sign these notes for National Marine Plastics, as an operating division of Miller Furniture, Incorporated."

## CONCLUSIONS

We will first consider defendant's contention that the trial court did not err in considering the parol evidence to show the true intent and meaning of the parties when the instruments were executed. In this connection defendant contends that the instruments are ambiguous and he was entitled to show that he was not personally liable thereon, but the same was the indebtedness of the Miller Furniture Co., Inc. He bases this on three factors. That Selected Investment Corp., was then and had been for sometime financing Miller Furniture Inc., of which he was president; that Walden knew National Marine Plastics Co., was an operating division of Miller Furniture Inc., and that he was acting for and on behalf of Miller Furniture Inc., as president; and, that on some of the vouchers attached to the checks of Selected Investment Corp., there appeared in parenthesis, under the name of National Marine Plastics Co., the name "Mad Man Miller, or Mad Man Miller Furniture" and that these notations are sufficient to show there was some doubt as to who was liable on the notes.

Title 15 O.S.1961 § 137 provides:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

In First National Bank of Ada v. Womack, 56 Okl. 359, 156 P. 207, we held:

"As a general rule parol evidence is not admissible to vary the terms of a written instrument, but the general rule is subject to the exception that, where anything appears upon the face of the instrument which suggests a doubt or ambiguity as to the party bound, or the character in which any of the persons who signed the instrument acted, parol testimony is admissible as between the original parties for the purpose of showing the true intent and meaning of the parties."

In Cohee v. Turner & Wiggins, 37 Okl. 778, 132 P. 1082, we held:

"When the question arises in a suit on a written obligation as to whether the signers executed the same in a representative capacity or as individuals, and anything appears on the face of the instrument which suggests a doubt as to the party bound, or as to the character in which the signers acted, parol evidence is competent, as between the original parties at least, for the purpose of showing the true intent of the parties when executing the instrument.

"(a) Such evidence is not admitted for the purpose, nor does it have the effect, of varying the language of the written instrument; it is admitted to explain and clear away the doubt and uncertainty inhering in the written language itself.

"(b) Where there is nothing on the face of the written instrument which suggests doubt as to the party bound, or as to the character, whether representative or individual, of the signers, then it is error to admit parol evidence tending to show that the signers executed the same in a representative character, so as to relieve them from individual liability."

We then look to the executed instruments to determine if they are ambiguous. Since all of the instruments related to the same subject matter and was substantially one transaction, all of the instruments should be construed together. See Rennie v. Oklahoma Farm Mortgage Co., 99 Okl. 217, 226 P. 314. The notes and mortgages are regular in form. The notes were signed "National Marine Plastics by: C. E. Miller". The mortgages listed "Claude E. Miller d/b/a National Marine Plastics Company" as the mortgagor and were signed "National Marine Plastics By: C. E. Miller". The oath as to ownership on the mortgages stated that Claude E. Miller was the lawful owner of the property described in the mortgage and this oath was signed "National Marine Plastics by: C. E. Miller". The bond was made by Claude E. Miller as principal and signed by him as principal. The "Authorization by Sole Owner" to the bank was signed by C. E. Miller, sole owner. The statement of net worth of Mr. and Mrs. Miller, submitted to plaintiff, listed investments in Miller Furniture and investments in National Marine Plastics Company. None of the instruments reflected that they were executed in behalf of Miller Furniture Co., by C. E. Miller, president, or that Miller Furniture Co., had any connection with the transactions.

The only reference to Miller Furniture was in one of the vouchers where under the name of National Marine Plastics Co., the name of "Mad Man Miller Furniture" was in parenthesis. There were four other vouchers where the name "Mad Man Miller" was used. The remaining six vouchers did not contain this notation. Even though the vouchers referred to can be considered as a part of the transactions, they constitute no more than identification and do not create an ambiguity in the instruments.

We therefore hold that the instruments were not ambiguous and they did not suggest a doubt as to the party bound or the character in which C. E. Miller executed the instruments and oral testimony was not admissible to vary the terms of the instruments.

The defendant contends however, that if the instruments were not ambiguous, plaintiff did not object to the introduction of the testimony of the defendant and therefore such testimony stands as competent evidence to be considered by the trial court and as such is sufficient to sustain the judgment of the trial court; that the alleged incompetency of the testimony cannot be first raised on appeal and cites cases in support of such contention.

Plaintiff takes the position that proper objection was made to the testimony; that the trial court was informed of its position that the testimony of non-liability on the part of the defendant was incompetent as tending to vary the terms of a written instrument and therefore of no probative value.

Assuming, but without deciding that proper objection was not made at the time such testimony was offered, the trial court was not justified in considering the same in reaching his final conclusion.

In 4 C.J.S. Appeal and Error § 290, p. 870, we find the following rule:

"The rule that objections cannot first be urged in the appellate court to the improper admission of evidence is applicable to the admission of parol evidence, except where the parol evidence rule is regarded as a rule of substantive or as a rule of positive law rather than merely a rule of evidence."

We have followed the above rule and in Seal Oil Co. v. Roberson, 175 Okl. 140, 51 P.2d 801, we said:

" * * * Plaintiff further contends that the defendant's objection to her testimony to the effect that the defendant promised to indemnify her against damages resulting from her breach of the Bowman and Crosby lease, on the ground that it was an attempt to vary or add to the terms of a written lease, came too late. If this proposition involved only the applicable rule of evidence, we would agree with plaintiff, but it goes beyond that, and the question is governed by the substantive law, by which rights and duties are defined and established. It is controlled by section 9456, O.S.1931 [15 O.S.1961 § 137], which reads as follows:

" 'The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument.' "

"This statute is mandatory and more than a rule of evidence. It is a part of our substantive law, and defines and establishes the rights of these parties under this evidence."

This case is cited with approval in the later case of Investors Royalty Co. v. Lewis, 185 Okl. 302, 91 P.2d 764.

In Warren v. Pulley, 193 Okl. 88, 141 P.2d 288, we said:

"Plaintiff next contends that defendant waived any right to object to the evidence of the oral warranty by failing to raise such objection in his pleadings. It should be remembered that plaintiff's petition did not state whether the warranty was oral or in writing or that a subsequent contract had been entered into. These matters developed at the trial, and defendant objected to the variance of the terms of the written contract by proof of a prior parol agreement at his first opportunity. It is well to point out, however, that the parol evidence rule is one of substantive law. Investors Royalty Co. v. Lewis, 185 Okl. 302, 91 P.2d 764. The rule determines the substantive rights of the parties and evidence of a parol agreement, superseded by a subsequent written contract, is not simply inadmissible in evidence, but such oral agreement is nonexistent in contemplation of law. Upon a demurrer to the evidence it is the duty of the court to determine whether the oral agreement has been superseded by the writing, and if so to disregard it, even though such evidence was admitted without objection. Seal Oil Co. v. Roberson, above. This contention is therefore, without merit."

In Pray v. Kidd Williams Drilling Corporation, (Okl.), 352 P.2d 380, we said:

"The written contract in the instant case, in plain, concise language, obligates defendant to pay the entire contract amount, which is conceded by defendant. The evidence relied on by defendant to establish a condition precedent clearly contradicts the terms of the written contract, inasmuch as it attempts to relieve defendant of the liability imposed by the contract as to ⅝ths of the consideration due plaintiff.

"Therefore, such evidence was incompetent under the statute and cases cited, and was properly disregarded by the trial court, whether such evidence was objected to or not. Seal Oil Co. v. Roberson, 175 Okl. 140, 51 P.2d 801."

We therefore hold that the admission of the testimony of the defendant was not controlled by the rule of evidence but was a rule of substantive law and although it may have been admitted without objection, such evidence was incompetent and should have been disregarded.

We further conclude that the defendant was personally liable on the notes and the trial court erred in rendering judgment for the defendant.

The cause is reversed and remanded with instructions to vacate and set aside the judgment in favor of the defendant and enter judgment in favor of the plaintiff for the amount stipulated to be due on the notes, with interest thereon and attorney fees as provided in the notes.

Reversed and remanded with directions.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHNSON, JACKSON and BERRY, JJ., concur.