**Stuart S. NESBITT and Anita L. Nesbitt, Plaintiffs in Error,**

**v.**

**HOME FEDERAL SAVINGS & LOAN ASSOCIATION, a corporation, Myrtle Janice Rooney, formerly Harris, Tulsa Rental & Investment Corporation, a corporation, and Newcomb Cleveland, Defendants in Error.**

**No. 41430.**

Supreme Court of Oklahoma.

March 5, 1968.

Rehearing Denied May 7, 1968.

McGee & Dowd, by Richard K. McGee, Tulsa, for plaintiffs in error.

Thomas R. Brett, Tulsa, for defendants in error, Tulsa Rental & Investment Corporation and Newcomb Cleveland.

BERRY, Justice.

Questions presented by this appeal evolve from a mortgage foreclosure action brought by plaintiff, Home Federal Savings & Loan Association, against all other parties as defendants in the trial court. Of primary concern is the effect of a loan transfer and assumption agreement executed by defendants Nesbitt and the corporate defendant, Tulsa Rental & Investment Corporation, acting by and through its president and principal stockholder, defendant Cleveland, at the time of conveyance. The dispositive issue involves the correctness of the trial court's judgment denying defendants Rooney and Nesbitt, et ux. personal judgment against defendant Cleveland under their respective cross-petitions.

The property involved (Lots 4–5–6, Block 9, Elm Park Addition to Tulsa,

Oklahoma) contained two six unit apartment buildings with a twelve car garage, and a frame dwelling and detached garage on Lot 6. In October, 1962, Myrtle Rooney, formerly Harris, conveyed the entire property to defendants Nesbitt, who executed their note for $50,000.00, secured by a first mortgage in favor of plaintiff. To effect the transaction Rooney was required to collateralize the transaction by assignment of a $17,500.00 savings certificate to plaintiff as additional security, thus becoming surety for Nesbitts' obligation. Defendant Rooney will be designated as the surety.

In March, 1963, defendants Nesbitt, hereafter referred to as defendants or grantors, advertised the property for sale, and defendant Cleveland, a member of the Bar but not a practicing attorney, appeared as a prospective purchaser. An option contract was executed, but the transaction was not consummated because of misunderstanding as to the consideration. However, the negotiations were kept open at Cleveland's written request. On March 28th Cleveland advised grantors by letter of assignment of his interest in the option to Tulsa Rental & Investment Corporation. This corporation, wholly owned and managed by Cleveland, admittedly had been formed for the purpose of acquiring title to real property without extending the defendant's personal credit or liability to such transactions. Defendants made written acknowledgment of this assignment and the corporation's election to exercise the option to purchase. The letter relating the assignment also called defendants' attention to necessity for securing an assumption statement from plaintiff.

After considerable discussion and some debate relative to condition of the properties, rental income, prospective repairs and the actual consideration, these parties met and closed the transaction on April 27, 1963. As the agreement was renegotiated, the corporation agreed to pay grantors $500.00 down payment and the amount of the prepaid insurance. Cleveland prepared and notarized a warranty deed conveying the apartment houses to the corporation. Purportedly for convenience in handling a possible sale of the dwelling (Lot 6), a separate deed was executed conveying this property to Cleveland individually. Contemporaneously grantors executed a Loan Transfer form furnished by plaintiff, which also contained a provision for grantee's assumption of the mortgage. Defendants (grantors) testified, and the trial court found, Cleveland had stricken the loan assumption provisions from the transfer statement after execution by defendants. The loan transfer and assumption agreement was not filed with plaintiff.

Cleveland went into possession and operated the properties in the corporation name, without filing the assumption agreement with plaintiff, but defaulted the required monthly payment on July 1, 1963. Plaintiff then applied for and secured appointment of a receiver for the property and thereafter filed this foreclosure action on October 4, 1963. Apparently the parties indulged some discussion after July relative to defendant surrendering the property to the Nesbitts, or their attempting to find another buyer. Defendants made written declination of these offers, denied ownership of any interest in the property, and asserted the matter to be the sole responsibility of the corporate defendant.

Plaintiff's foreclosure action asked perfecting of its title, foreclosure of the lien, and sale of the property, with deficiency judgment over against defendants (Nesbitts) in the event foreclosure sale failed to satisfy the mortgage debt. The plaintiff also sought foreclosure of the defendant surety's collateralization agreement.

Defendant surety answered admitting collateralization of defendants' mortgage debt, denied having consented to the sale, and alleged negotiation and completion of sale to the corporation jeopardized the collateral security so that her agreement in behalf of the defendants should be voided and, in event of foreclosure of the collateral account, she was entitled to judgment

over against defendants Nesbitt. By cross-petition the surety alleged the collateral agreement constituted her a surety of defendants (Nesbitt) which entitled her to maintain a cross-action for relief against the principals. The surety asked denial of foreclosure and release of collateral security, and for judgment over against these defendants in event the security was foreclosed.

Defendants (Nesbitt) answered admitting superiority of plaintiff's claim, but denied other allegations of the petition, and the surety's cross-petition, alleging all obligations and responsibility for the property were assumed by Cleveland and corporate defendant. By cross-petition these defendants alleged they contracted with Cleveland individually wherein he agreed to assume and pay the plaintiff's mortgage loan; defendant represented himself to be an attorney, and in reliance upon his representations executed the prepared contract under which the property was transferred to defendant corporation; defendant further represented the obligation had been assumed and that he would take over management of the property, and defendant did assume full responsibility for the obligation. Prior to trial defendants' amended their answer praying, in event any judgment or deficiency judgment was rendered against them, for judgment over against Cleveland and the corporation by reason of acts committed by those parties against defendants Nesbitt.

Cleveland and the corporate defendant answered admitting plaintiff's allegations, but asserted that Cleveland acted at all times in behalf of the corporation. Separate replies and responses filed by the parties did not enlarge the issues and need not be detailed.

Upon trial the parties stipulated plaintiff's mortgage and the collateralization agreement could be foreclosed and judgment rendered for the amounts shown to be due. The pleadings and opening statements of the parties confined the issues to matters involving the responsibilities and obligations of Cleveland and the corporation to the defendants Nesbitt and the surety.

The Nesbitts' evidence was directed toward showing Cleveland's personal actions in the transaction, including representations that he was an attorney and advised them as to the legal meaning of the phrase "subject to the mortgage." Further, Cleveland implied he was handling their interests so other counsel need not be employed, thereby saving defendants money. Relying upon such statements and conduct defendants relied upon Cleveland to perform what was necessary to the transaction. The evidence of both the surety and the Nesbitts was that Cleveland purported to act as an attorney while at the same time preparing instruments, although representing himself and the corporation throughout the entire transaction, even to altering the loan assumption agreement after execution of the instrument.

Under the stipulation and evidence there was no question as to plaintiff's right to foreclosure, or the surety's right to a judgment over against the defendants Nesbitt. The only issue involved was whether the surety and the Nesbitts were entitled to judgment over against Cleveland and the corporate defendant. Resolution of this question required determination of the primary factual issue as to whether Cleveland or the corporate defendant agreed to assume the mortgage indebtedness.

Considering only the pertinent portion of the judgment involved, the trial court found plaintiff was entitled to foreclosure against defendants and sale of the premises in satisfaction of the mortgage; as part of the same transaction the surety had provided additional security which plaintiff was entitled to foreclose and apply against any unpaid balance of the judgment. The court also found the defendant corporation, acting through Cleveland, assumed and agreed to pay the mortgage debt when acquiring the property from the Nesbitts, although title to Lot 6 was taken individually in trust for the corporation as a matter of

convenience. The loan assumption provision was deleted by Cleveland as president of the corporation after defendants had executed the transfer and loan statement. By reason of the corporation's acts this defendant assumed and agreed to pay the mortgage indebtedness, and defendants (Nesbitt) were entitled to judgment over against corporation under their cross-petition for any deficiency judgment rendered against them; defendant surety was entitled to judgment over against corporation, under her cross-petition, for amount of collateral security lost under foreclosure.

The court found that during negotiations leading to the sale of this property the defendants knew Cleveland had assigned all his rights to the defendant corporation and was acting on behalf of that corporation; Cleveland advised Nesbitts that no personal liability would be assumed, and evidence established that he did not assume the mortgage indebtedness and thus bore no personal liability. Based upon these findings the court rendered judgment for Cleveland against claims of the surety and the Nesbitts. Between Nesbitts and their surety the court decreed a suretyship relationship and entered judgment for the portion of collateral account that might be appropriated by plaintiff.

The foundation of defendants' appeal is that Cleveland could not perform an illegal act on behalf of defendant corporation, which was his alter ego, and thereafter avoid personal liability for such acts by dealing in the name of a shell corporation. Further, being a member of the Bar, it was more reprehensible for Cleveland to do such acts with full knowledge of their import and then attempt to rely upon technicalities to avoid liability. From this thesis defendants derive four propositions urged to support the claim this Court should rectify the trial court's error and fasten personal liability upon Cleveland.

■ The first contention is that where a corporate officer by fraudulent act induces another to contract with the corporation to his detriment then such officer is individu- ally liable to the injured party. Without reiteration, it is sufficient to observe this claim rests entirely upon defendants' own interpretation of the evidence regarding Cleveland's conduct, which cannot support the ultimate conclusion that having individually perpetrated a fraud he cannot avoid personal liability as a consequence of such acts. In this connection defendants urge the acts complained of arose from the fact Cleveland was a member of the Bar, and physically altered the loan assumption agreement after execution.

The principal act relied upon is Cleveland's alteration of the loan assumption agreement upon closing of the transaction. This asserted fraudulent act occurred after defendants had been advised Cleveland no longer was involved individually, and after they gave written approval to the corporation becoming the principal in the transaction. This evidence cannot be construed as showing that alteration provided the inducement for the contract with the corporation. Defendants cite Garrett v. Myers, 190 Okl. 273, 123 P.2d 965, to support the claim of Cleveland's liability for fraud which induced them to contract with the corporation.

■ Casual reference to the rule stated in syllabus one of Meyers, supra, discloses inapplicability to the present situation. The alteration of the loan agreement was not the inducement which misled defendants into a poor business venture. Additionally, the rule there stated fixes liability of a corporate officer, for fraud in the inducement of a contract with the corporation, as arising ex delicto and not ex contractu which is to be enforced by an action against that officer as an individual. The same distinction is observable in Rogers v. Brummett, 92 Okl. 216, 220 P. 362.

The further fraudulent act charged was that, as an attorney, Cleveland made misrepresentations and misstatements of the law as to the meaning of "subject to the mortgage thereon", and also as to the import of other contracts and agreements, thus creating the illusion that "he and the corpora-

tion" were assuming the loan. The defendants were intelligent, educated persons who had engaged in other property transactions. While misstatements allegedly were made as to meaning of the quoted phrase, which served to mislead defendants into believing Cleveland was assuming the mortgage loan, the record completely fails to support this argument. Long prior to closing the sale Nesbitts knew and approved of assignment of the contract, and from that time forward knew they were dealing with the defendant corporation. Defendants admitted having been advised that Cleveland did not intend to accept personal liability, and had formed the defendant corporation for this purpose, which fact was explained to defendants. The criticism directed against Cleveland's act in forming the corporation is not persuasive, in view of our recognition of the propriety of such action as expressed in Buckner v. Dillard, 184 Okl. 586, 89 P.2d 326.

 Defendants charge Cleveland with misstating and misinterpreting the law in these respects which, together with other statements, left the impression the mortgage was to be assumed. The record does not support this claim, the authorities cited do not support the argument. Defendants cited National Aid Life Assurance v. Krow, 188 Okl. 163, 107 P.2d 177, which quotes at length from White v. Harrigan, 77 Okl. 123, 186 P. 224, 9 A.L.R. 1041. Therein the basis for relief upon grounds of misrepresentation of law was stated in this manner:

" 'Generally speaking, a misrepresentation of law affords no grounds of redress or relief on the theory that all men are supposed to know the law. It is not universally true, however, that a misrepresentation of the law is not binding upon the party who made it. Where one has superior means of information, professes a knowledge of the law, and thereby obtains an unconscionable advantage of another who is ignorant and has not been in [a] situation to become informed, the injured party is entitled to

relief as well as if the representation had been made concerning a matter of fact.' "

The evidence failed to establish defendants' ignorance, that they had not been in a situation to become informed, or that an unconscionable advantage was obtained.

 The rule quoted from Faught v. Norvell, Okl., 258 P.2d 642, as to the basis of cognizable fraud is not in point. The requirements are (1) for the promise made to be performed in the future as an inducement to the contract; and (2) an intention not to perform which is shown to have existed when the promise was made. Defendants' own evidence establishes that at all times defendants were advised Cleveland would not assume defendants' mortgage liability. Thus, there was no promise made for the future performance which induced defendants to make the agreement.

Other contentions made are predicated upon the asserted high degree of responsibility owed by an attorney toward laymen, and that an attorney is presumed to know the import of his legal pronouncements and acts. These legal precepts are matters of which the Court takes judicial notice. However, application of these principles to the evidence in this record fails to support the conclusion that a finding of personal liability is thereby required.

Two further contentions relate to asserted error relative to the court's failure and refusal to consider probative evidence. There was deposition testimony, excluded by the court, bearing upon Cleveland's previous involvement in other litigation over real property. Defendants' premise is that the trial court erred in failing to consider such probative evidence, which would have tended to show Cleveland's general scheme and plan of doing business which had caused problems theretofore and disclosed him to have been guilty of other improprieties. No authority is offered in support of this argument.

 The elementary rule is that evidence must be relevant to the facts in issue in the case being tried, as tending to prove

or disprove such facts. Evidence of collateral or other facts which do not afford a reasonable presumption or inference as to the principal fact in dispute are irrelevant and inadmissible. Evidence of similar or comparable acts or conduct incapable of raising a reasonable presumption or inference relative to the principal fact or matter in dispute generally is inadmissible. Hunt v. Jones, 98 Okl. 99, 224 P. 354; Kurn v. Radencic, 193 Okl. 126, 141 P.2d 580; Woods v. Levine, Okl., 311 P.2d 204. The trial court properly excluded the proffered testimony.

Judgment affirmed.

All Justices concur.