2002 OK 11

**FIRST NATIONAL BANK IN DURANT,**
a national banking association,
Plaintiff/Appellant,

v.

**HONEY CREEK ENTERTAINMENT
CORP.,** an Oklahoma corporation,
Defendant,

Lena Clancy, a/k/a Lena L. Clancy,
and Acme Finance Company,
Defendants/Appellees,

Gerald D. Hagee; Sulphur Community
Bank, an Oklahoma banking corpora-
tion; Specialty Equipment Leasing
SVCS; Wesley (Doc) Webber; Board of
County Commissioners of Murray Coun-
ty and Murray County Treasurer; Coun-
ty Commissioners of Bryan County and
Bryan County Commissioners of Bryan
County, Defendants,

Farm Credit Bank of Wichita, Additional
Party Defendant.

No. 93,078.

Supreme Court of Oklahoma.

Feb. 12, 2002.

Rehearing Denied Sept. 17, 2002.

John N. Hermes, Phillip D. Hart, Kymala B. Carrier; McAfee & Taft, Oklahoma City, OK, and Mark A. Morrison, Durant, OK, for Appellant First National Bank in Durant.

Dan Little and Prudence Little; Little, Little, Little, Windel & Coppedge, Madill, OK, for Appellees Lena Clancy and Acme Financial Company.

BOUDREAU, Justice:

¶ 1 This case arises from the First National Bank in Durant's (Bank) $2.25 million loan to Honey Creek Entertainment Corporation (Honey Creek) to buy the Arbuckle Wilderness Park (Park) located just east of I–35 in Murray County, Oklahoma. Lena Clancy, Jim Rainer and Ron Armitage owned Honey Creek. Each owned one-third of the issued stock.

¶ 2 Alan Dufur was the President and C.E.O. of the Bank and was closely involved in the loan from beginning to end. He is the officer with whom Clancy, Rainer and Armitage dealt.

¶ 3 Security for the loan included Honey Creek's own assets and the three owners' stock in Honey Creek. The Bank also required each of the owners to personally guarantee the loan. Finally, because the Bank required additional collateral, Clancy's company, Acme, executed a surety agreement mortgaging 3,000 acres of ranch land in Bryan and Atoka Counties.[1]

¶ 4 The loan closing occurred on October 11, 1994.[2] Trouble began almost immediately and in May of 1997, Honey Creek defaulted on the loan. The Bank commenced this action against Honey Creek, Clancy and Acme on June 3, 1997. The Bank sought a money judgement against Honey Creek on its indebtedness to the Bank and a money judgment against Clancy on her guaranty of the Honey Creek indebtedness. The Bank also sought to foreclose on the mortgages, security agreements and financing statements executed by Honey Creek, Clancy and Acme, respectively. Honey Creek immediately filed for bankruptcy protection and received an automatic stay, but the Bank's claims against Clancy and Acme proceeded.

¶ 5 Clancy and Acme defended by alleging that the Bank, through Dufur, fraudulently induced Clancy to execute the guaranty and surety agreements by his oral assurances prior to closing. Clancy alleged Dufur repeatedly assured her that if Honey Creek were to default, Clancy would not incur liability and Acme's mortgages would not be foreclosed until after all Honey Creek assets were sold and the sales proceeds applied to the debt, and even then Clancy would be liable only for one-third of the remaining indebtedness, if any. Clancy also asserted a

---

1. A surety and a guarantor have in common that they are both bound for another person. "A guaranty is a promise to answer for the debt, default or miscarriage of another person." 15 OS 321. It is essentially an undertaking to answer for another's liability. *Commonwealth Cotton Oil Co. v. Lester*, 1932 OK 2, 9 P.2d 738, 745. "A surety is one who, at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor." 15 O.S. § 372.

2. At the closing on October 11, 1994, Clancy executed and delivered to the Bank a guaranty agreement, personally guaranteeing the payment when due of any and all Honey Creek indebtedness to the Bank. She also executed and delivered to the Bank a security agreement wherein she pledged all of her Honey Creek stock as collateral for any and all Honey Creek indebtedness to the Bank, and Acme executed and delivered to the Bank mortgages and financing statements covering its Bryan County and Atoka County properties.

counterclaim against the Bank for negligence in impairing the value of Honey Creek's assets.

¶ 6 The case was tried to a jury on September 15–17, 1998. At the conclusion of the evidence, the Bank moved for a directed verdict. The trial court overruled the motion and submitted the matter to the jury. The jury returned a verdict against the Bank on its claims against Clancy and Acme, finding that Dufur had fraudulently induced Clancy to sign the agreements, and found in favor of Clancy on her negligence counterclaim against the Bank. On the counterclaim, the jury determined the total loss in value of Honey Creek's assets to be $1,860,000.00. The trial court overruled the Bank's motion for judgment notwithstanding the verdict and entered judgment on the jury verdict.[3] The Bank appealed. The Court of Civil Appeals reversed. Both sides sought certiorari review which we previously granted.

## I.

## ISSUES

¶ 7 We have two issues to review on certiorari. The first is whether the Bank is entitled to judgment as a matter of law on Clancy and Acme's defense of fraud in the inducement or whether, instead, the trial court properly submitted that issue to the jury. The second is whether under the evidence presented, Clancy's negligence counterclaim failed as a matter of law.

## II.

## STANDARD OF REVIEW

¶ 8 The standard for determining a motion for judgment notwithstanding the verdict (JNOV) is identical to the standard for determining a motion for directed verdict. 12 O.S.1991, § 698. We review a trial court's ruling on a motion for JNOV by the same standard used by the trial court. We consider as true all evidence favorable to the non-moving party together with all inferences that may be reasonably drawn therefrom,

and we disregard all conflicting evidence favorable to the moving party. *Franklin v. Toal,* 2000 OK 79 ¶ 13, 19 P.3d 834, 837. A motion for JNOV should not be granted unless there is an entire absence of proof on a material issue. *Id.*

## III.

### FRAUD IN THE INDUCEMENT

¶ 9 In its response to Clancy and Acme's defense of fraud in the inducement, the Bank makes three arguments in the alternative. The Bank argues, first, that Dufur did not make the statements which Clancy testified he made; second, even if he made the statements, the statements should be characterized as misrepresentations of law which are not admissible under the parol evidence rule; and third, even if Dufur's statements are characterized as misrepresentations of fact instead of as misrepresentations of law, the statements are not admissible under the parol evidence rule. We reject out of hand the Bank's first argument since in reviewing the denial of a motion for JNOV we must disregard all conflicting evidence favorable to the Bank. The Bank's second and third arguments require analysis and application of the parol evidence rule.

¶ 10 The parol evidence rule is not a rule of evidence but is instead a rule of substantive law. *Mid–America Corp. v. Miller,* 1962 OK 123, 372 P.2d 14, 18; *see also* Restatement (Second) of Contracts § 213, comment a (1979). Under the parol evidence rule, pre-contract negotiations and oral discussions are merged into and superseded by the terms of an executed writing. 15 O.S. 1991, § 137; *Bonner v. Oklahoma Rock Corp.,* 1993 OK 131, 863 P.2d 1176, 1180; *see also* Restatement (Second) of Contracts § 213 (1979). The rule provides that parol evidence cannot vary, modify or contradict the terms of an executed written agreement. *Ollie v. Rainbolt,* 1983 OK 79, 669 P.2d 275, 279. The rule fosters an important public policy—the certainty and stability of contracts. *American Perforating Co. v. Okla-*

---

**3.** Under Oklahoma's comparative negligence statute, the jury assigned 80% of the total negligence to the Bank and 20% to Clancy. The trial court then awarded Clancy money damages in the amount of $1,488,000.00, which is 80% of the total damages.

*homa State Bank,* 1970 OK 4, 463 P.2d 958, 963. The parol evidence rule applies not only to note makers but also to guarantors and sureties. *Maney v. Cherry,* 1935 OK 115, 41 P.2d 82, 84.

¶ 11 The Bank argues that if Dufur did make the representations as alleged, the representations amounted only to matters of law. The Bank points out that with limited exceptions, fraud cannot be predicated on misrepresentations of law or misrepresentations as to matters of law. While this is an accurate statement of the law, *see Nesbitt v. Home Federal Savings & Loan Assoc.,* 1968 OK 31, 440 P.2d 738, 743; *First National Bank v. Muskogee Discount House,* 1963 OK 130, 382 P.2d 137, 139, Dufur's alleged statements do not constitute misrepresentations of law. The statements allegedly made by Dufur to Clancy do not relate to Clancy's legal liability under the written agreements. Rather, they relate to the intention of the Bank not to enforce the written agreements to their fullest extent. We have no trouble characterizing Dufur's alleged statements as misrepresentations of fact.

¶ 12 The Bank then argues that even if Dufur's statements are characterized as misrepresentations of fact, they are not admissible under the parol evidence rule. We disagree. While the parol evidence rule precludes the admission of evidence that seeks to vary, contradict or add to an integrated agreement, it does not prohibit extrinsic evidence which will not bring about this result. Such evidence falls outside the scope of the rule. It is well-established in Oklahoma that the parol evidence rule does not preclude evidence of false and fraudulent representations of fact offered to establish fraud in the inducement of the execution of a contract, even when those representations directly contradict the contract provisions. *Bredouw v. Jones,* 1966 OK 93, 431 P.2d 413, 419; *A.A. Murphy Inc. v. Banfield,* 1961 OK 197, 363 P.2d 942; *Miller v. Troy Laundry Machinery Co., Inc.,* 1936 OK 513, 62 P.2d 975, 977.

As we have repeatedly said:

The purpose and effect of the evidence introduced in the case at bar is not to contradict or vary the terms of the written contract, but to show that the plaintiff was imposed upon, and the fraud was practiced in obtaining his signature thereto. Fraud vitiates everything it touches, and a contract obtained thereby is voidable. And evidence is always admissible to show that contracts have been fraudulently obtained.

*Bredouw,* 431 P.2d at 419 (quoting *American Asbestos Products Co. v. Smith Bros.,* 1937 OK 604, 73 P.2d 839, 841). In these situations, the public policy fostering the certainty and stability of contracts gives way to the public policy against fraud.

¶ 13 Clancy defended the Bank's breach of contract claims by asserting that she had been fraudulently induced by Dufur to sign the guaranty and surety agreements. In reviewing the trial court's denial of the Bank's motion for JNOV on these claims, we must consider as true all evidence favorable to Clancy and we must disregard all evidence favorable to the Bank. Thus, we view the following facts as true.

¶ 14 Dufur and Clancy had a long-term business relationship prior to the Honey Creek loan. Dufur had assisted Clancy in an earlier project in 1991, the Deer Run Lodge project, by helping obtain a feasibility study and helping make sure the lodge would be profitable not only to Clancy but also to the community. Dufur, through the Bank, loaned $250,000.00 to Acme for that project. Dufur was Clancy's personal banker and business friend. She had a great deal of faith in him. She respected and relied on his business advice and she developed a high degree of trust in him. Dufur knew that Clancy trusted him and relied on his advice. Clancy spoke with Dufur many times during the six months of negotiations leading to the closing of the Honey Creek loan. Dufur told Clancy on numerous occasions that she would never be responsible for more than one-third of the Honey Creek debt. Neither Dufur nor anyone else ever mentioned to her that she would be responsible for the entire debt. As she testified: "It was never mentioned to me, ever, by anyone." She would not have signed the guaranty agreement had Dufur not assured her the Bank would never seek more than one-third of the debt from her.

With respect to the 3,000 acres of ranch land, it was not part of the Honey Creek negotiations in the beginning. When the Bank suggested that Clancy, through Acme, mortgage the ranch land, Clancy did not agree at first. Dufur reassured her that she would never be responsible for more than one-third of the debt, that the Acme mortgages were needed out of an "abundance of caution that would probably never be needed," and the mortgages would "never be called upon" until the assets of Honey Creek were sold and the proceeds applied to the debt. Clancy would not have agreed to mortgage the ranch land but for Dufur's assurances and agreements regarding the Bank's intent.

¶ 15 The trial court submitted Clancy and Acme's defense of fraudulent inducement to the jury. The jury returned a verdict in favor of Clancy and Acme on the Bank's claims for breach of contract, finding that Dufur's misrepresentations fraudulently induced Clancy to execute the guaranty and surety agreements. At the conclusion of the trial, the trial court overruled the Bank's motion for JNOV on these claims. When a trial court denies a motion for JNOV, we must affirm its decision unless there is an entire absence of proof on a material issue. *Franklin v. Toal*, 2000 OK 79 %57 13, 19 P.3d 834, 837. Under this standard we conclude the trial court properly denied the Bank's motion for JNOV on the Bank's claim against Clancy for breach of her guaranty agreement and on the Bank's claim against Acme for breach of the surety agreement.

## IV.

## CLANCY'S NEGLIGENCE COUNTERCLAIM AGAINST THE BANK

¶ 16 In her answer, Clancy asserted a counterclaim against the Bank for its alleged negligence in impairing the value of Honey Creek's assets. At trial, the Bank argued Clancy did not have standing to assert such a counterclaim. Clancy assured the trial court that her counterclaim did not seek damages for any injury to Honey Creek.[4] She argued, instead, that she could assert the counterclaim in her capacity as a guarantor because the loss in value of Honey Creek's assets injured her in her capacity as a guarantor. Although the trial court had previously directed a verdict against Clancy on her defense that her guaranty liability stood exonerated by the Bank's impairment of collateral,[5] it nevertheless allowed Clancy, as a guarantor, to maintain a claim for negligence against the Bank.

¶ 17 In any action based on negligence, the first prerequisite must be to establish the existence of a legally cognizable duty. *Wofford v. Eastern State Hosp.*, 1990 OK 77, 795 P.2d 516, 518. Duty is a question of law for the court in a negligence action although the existence of a duty often depends on the relationship of the parties. *Delbrel v. Doenges Bros. Ford, Inc.*, 1996 OK 36, 913 P.2d 1318, 1320.

¶ 18 In the instant case, Clancy failed to establish the existence of a legally cognizable duty owed to her by the Bank to preserve the value of Honey Creek's assets. Clancy claims that Armitage, one of the co-owners and president of Honey Creek, damaged Honey Creek's assets by mismanaging the Park and by selling the Park's animals and equipment without applying the proceeds to the debt. Clancy blames the Bank for failing to prevent Armitage from damaging Honey Creek's assets.

¶ 19 Clancy failed to establish, however, that the Bank owed her a duty to prevent a diminution in value of Honey Creek. The evidence at trial established that the relationship of the Bank and Clancy was a debtor-creditor relationship, not a fiduciary relationship. *Beshara v. Southern Nat. Bank*, 1996

---

4. She also conceded in her appellate brief that a shareholder of a corporation may not assert a claim on behalf of the corporation.

5. Impairment of collateral is normally a defense to an action on a guaranty or surety agreement for which the remedy is a discharge of the guarantor's obligation to the extent of the value of the collateral impaired. 15 O.S.1991 §§ 338, 377.

Although we have never specifically addressed the issue, the Restatement (Third) of Suretyship and Guaranty allows a guarantor, under limited circumstances, to assert a claim against the creditor for impairment of collateral. Restatement (Third) of Suretyship and Guaranty, §§ 37(3)(d), 42 (1996).

OK 90, 928 P.2d 280, 288 (a bank's relationship to its customer is that of debtor-creditor). Similarly, Clancy failed to identify any written agreement that imposed upon the Bank a duty to monitor the loan collateral for the benefit of Honey Creek, Clancy or Acme. In the instant case it was the duty of Honey Creek's officers and directors, including Clancy, to manage Honey Creek's assets—not the duty of the Bank.

¶ 20 Because Clancy did not establish that the Bank owed her a duty to preserve the value of Honey Creek's assets, Clancy's negligence counterclaim against the Bank failed as a matter of law under the evidence presented. The trial court erred in not granting the Bank's motion for JNOV on Clancy's negligence counterclaim against the Bank. We reverse the trial court's judgment to the extent that it awarded money damages to Clancy on her counterclaim.

## V.

### CONCLUSION

¶ 21 We hold that the trial court properly submitted Clancy and Acme's fraudulent inducement defense to the jury and we affirm that portion of the trial court's order which denied the Bank's motion for JNOV directed to the Bank's breach of contract claims. We further hold that Clancy's negligence counterclaim against the Bank failed as a matter of law under the evidence presented and that the trial court erred when it overruled the Bank's motion for JNOV directed to the counterclaim. We remand this case to the trial court to enter judgment consistent with this opinion, that is, for Clancy and Acme on the jury verdict in their favor on the Bank's breach of contract claims, and against Clancy on her negligence counterclaim against the Bank.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; JUDGMENT OF THE TRIAL COURT AFFIRMED IN PART AND REVERSED IN PART; CAUSE REMANDED WITH INSTRUCTIONS.**

¶ 22 HARGRAVE, C.J., LAVENDER, OPALA, KAUGER, SUMMERS, WINCHESTER, JJ., concur.

¶ 23 WATT, V.C.J., concurs in Part IV, dissents to Part III.

¶ 24 HODGES, J., disqualified.