2015 OK CIV APP 96

**ZEPHYR SWD, LLC, an Oklahoma Limited Liability Company, Plaintiff/Appellee,**

v.

**McCLARY TRUCKING, INC., Defendant/Appellant.**

**No. 112514.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Oct. 22, 2015.

Billy M. Croll, Hartzog, Conger, Cason & Neville, Oklahoma City, Oklahoma, for Plaintiff/Appellee.

Desmond Sides, Poteau, Oklahoma, for Defendant/Appellant.

WM. C. HETHERINGTON, JR., Chief Judge.

¶1 Defendant McClary Trucking, Inc. (McClary) appeals the judgment in favor of Plaintiff Zephyr SWD, LLC (Zephyr) entered after a bench trial in Zephyr's action for breach of contract or quantum meruit, seeking payment of $59,201.50 in unpaid invoices for salt water disposal in Zephyr's wells in Dewey County, Oklahoma. The trial court found McClary indebted to Zephyr for $59,201.50, which McClary argues was released by written agreement. The judgment is AFFIRMED.

## FACTS

¶2 Zephyr SWD is an Oklahoma limited liability company that operates two salt water disposal (SWD) wells under permits from the Oklahoma Corporation Commission in Dewey County, Oklahoma—the "Litsch SWD" and the "Scheffler SWD" (the Wells). McClary is an Oklahoma trucking corporation hired by oil and gas companies to haul

saltwater from oil and gas wells for delivery to Zephyr, who then injects the saltwater into the Wells.

¶ 3 Zephyr's petition against McClary filed in January 2013 alleges the parties executed an agreement in Oklahoma County, Oklahoma regarding saltwater disposal and that McClary has failed to pay $59,201.50 to Zephyr. The petition's Exhibit A included a copy of 1) Zephyr's Statement of Account listing invoices dated between July 25, 2012–November 14, 2012 and six payments McClary made during the same period, and 2) multi-page disposal logs for each SWD well. McClary timely filed its Answer, denying the material allegations in the petition and raising several affirmative defenses.

¶ 4 In June of 2013, Zephyr moved for summary judgment, alleging it was undisputed that "for approximately one year prior to June 2012," McClary had delivered quantities of produced saltwater to the Wells in Dewey County for disposal by injection, for which McClary paid Zephyr the established rated of "50 cents per BBL (barrel)." Zephyr also alleged it and McClary had executed a letter agreement on June 27, 2012, providing that McClary "will have the right to continue to deliver saltwater to Zephyr on a first come basis and payment will be expected within 30 days for said disposal." To support the alleged unpaid balance for SWD fees of $59,201.50, Zephyr attached copies of the petition with attached statement of account and documentation, the June 27, 2012 letter agreement, and an affidavit from David Johnson as "the managing member of Zephyr SWD, LLC."

¶ 5 McClary filed its response to Zephyr's motion in July 2013, admitting "the parties have a disagreement resulting in the *buy out* of the company by the Plaintiff for $475,000." As pertinent facts, McClary contended that *"Zephyr Operating Co., LLC* agreed to purchase the interest of [McClary]" for that price, "on the same date as the Buy Out Agreement . . . the parties executed a Letter Agreement which contradicts the Buy Out Agreement," and that it paid the alleged unpaid invoices. McClary argued there were issues of material facts regarding whether a contract exists between the parties, who is the proper party of the alleged agreement, and whether it owes Zephyr SWD "anything under the Statement of Account." The attached evidentiary materials included two separate letter agreements dated June 27, 2012, a modified Statement of Account on which McClary had written "the check number evidencing the payment of these invoices," copies of cancelled checks, and an affidavit of Tina McClary attesting by her examination of business records, etc., the statement of account attached to the petition is not a true representation of the payments McClary made.

¶ 6 In October 2013, Zephyr moved for the trial court *to reconsider* its motion for summary judgment *and* "to consider, for the first time, additional evidence that McClary owes Zephyr SWD $59,201.50." Zephyr attached another affidavit from David Johnson and eight invoices he claimed McClary never paid, *i.e.,* 6/20/12 (2), 6/21/12 (2), 7/1/12, 7/11/12 (2), 10/19/12. Johnson attested in his affidavit that "none of the invoices or loads in Exhibit 4 to this Motion to Reconsider are noted on the checks from McClary. By their own admission they did not pay for these invoices on these loads with any of these checks."

¶ 7 The next month, McClary filed a response to Zephyr's reconsideration motion, pointing out the invoices attached to its last motion were not attached to either Zephyr's petition or motion for summary judgment and predate the Statement of Account attached to the petition. After arguing Zephyr's motion to reconsider should be denied as untimely,[1] McClary argued it owes no money to Zephyr SWD, and the new invoices create several questions of fact regarding the accuracy of the amount alleged to be owed by McClary.

---

1. Under proposition I, McClary states Zephyr's "motion for summary judgment was scheduled for hearing on July 26, 2013. The Court *denied* [Zephyr's] motion for summary judgment and an Order to that effect was mailed to [Zephyr's] counsel. [Zephyr's] motion to reconsider was filed October 8, 2013, almost three months after the Court's ruling on the Motion for Summary Judgment."

¶ 8 On December 31, 2013, the trial court filed an "Order of Judgment," stating a hearing was held December 16, 2013, finding, in pertinent part, that McClary is indebted to and ordered to pay Zephyr SWD the principal sum of $59,201.50, and granting judgment in favor of Zephyr SWD against McClary in the same amount. McClary appeals this judgment.[2]

## STANDARD OF REVIEW

■■■ ¶ 9 A trial court's findings of fact in an action at law "have the same force and effect as the verdict of a jury and those findings will not be disturbed on appeal where there is any evidence reasonably tending to support the findings." *Million v. Million,* 2012 OK 106, ¶ 8, 292 P.3d 21, 23. We are also mindful that "the credibility of witnesses and the effect and weight to be given to their testimony are questions of fact, not questions of law for the appellate court." *Id.*

## ANALYSIS

■■■ ¶ 10 McClary's three propositions all challenge the trial court's interpretation of the June 27, 2012 letter agreements. "If the language of a contract is clear and without ambiguity, the Court is to interpret it as a matter of law." *Corbett v. Combined Communications Corp. of Oklahoma, Inc.,* 1982 OK 135, ¶ 5, 654 P.2d 616, 617. "Similarly, the existence of an ambiguity is a decision to be made by the Court." *Id.* "We will review matters of law under a *de novo* standard." *Chesapeake Exploration Limited Partnership v. Chesapeake Exploration Limited Partnership,* 2004 OK CIV APP 94, ¶ 17, 103 P.3d 621, 625.

■■■ ¶ 11 Our paramount objective in construing a contract is to give effect to the mutual intention of the parties as it existed at the time of contracting, as far as it is

---

**2.** For the record, the order on appeal states "On December 16, 2013, the matter of [Zephyr's] *Motion for Summary Judgment* and *Motion to Reconsider that Motion* for Summary Judgment came before the Court on a *scheduled evidentiary hearing and bench trial.*" (Emphasis added.) McClary's Petition in Error indicates its appeal is brought from "Judgment, Decree or Final Order of District Court" and in Exhibit B, "Summary of the Case," it states "this case was tried on December 16, 2013, with the Trial Court concluding ..." Both the appellate and the original district court records include a letter to McClary from the Oklahoma County Court Clerk dated May 28, 2014, listing several items designated for inclusion in the record "were not in the district court file." Included in that list were Judge Swinton's two separate rulings on 1) Zephyr's Motion for Summary Judgment, the first of which the appearance docket indicated was "Overruled" on "7–26–13" and 2) Zephyr's Motion for Court to Reconsider the Motion for Summary Judgment, noted on the "11–15–13" docket as "Sustained/Non-jury trial set for 12–16–13." The district court record includes McClary's response to the Court Clerk dated June 24, 2014 and filed June 27, 2014, which explains, in relevant part, "[a]lthough I circled these Court Minutes in the Designation of Record, please feel free to complete the record without the Court Minutes." McClary's response letter was not filed in the Supreme Court.

Because the December 16, 2013 hearing transcript and the parties' briefs indicate the issue of McClary's liability was decided *prior* to the order on appeal, this Court filed a post-assignment Order on May 11, 2015, identifying Judge Swinton's two court rulings as missing from the ap-

pellate record and directed McClary to file a supplemental record including the items with the Supreme Court "on or before May 26, 2013(sic)." McClary instead filed an *"Amended Designation of Record for Appeal from District Court"* on May 28, 2015, attaching a court appearance docket on which it circled all the items it had originally circled in its Designation of Record *except for* the two rulings addressed in this Court's May 11, 2015 Order. We assume from the Amended Designation and June 24, 2014 response to the County Court Clerk, McClary agrees for the appeal to proceed without the requested court rulings and McClary also agrees the order on appeal is a final determination of all the issues between the parties.

Regardless, this Court is obligated to determine its own jurisdiction. Although Judge Swinton may have determined the issue of liability at the November 15, 2013 hearing, that ruling was never memorialized of record. Even if it had been, a partial summary judgment on only liability is interlocutory and subject to modification until entry of final judgment. Review of December 16, 2013 evidentiary hearing transcript reveals the trial court clearly reconsidered that issue, *e.g.,* despite Zephyr's counsel's objection to a line of questions based on the court's previous determination of liability, the trial court overruled the objection and heard the testimony, which may explain the lack of memorialization of both rulings. In light of the above, we conclude it is clear from the December 31, 2013 order on appeal, as written, the trial court intended the ruling to be a final determination of McClary's liability for breach of the parties' oral contract for salt water disposal and of the amount due and owing under the same.

ascertainable and lawful. 15 O.S.2011 § 152. The language of a contract governs its interpretation if the language is clear and explicit and does not involve an absurdity. 15 O.S. 2011 § 154. The intention of the parties to a written contract must be ascertained from the writing alone, if possible. 15 O.S.2011 § 155. If there are several contracts relating to the same matter, between the same parties, and made as parts of substantially one transaction, we will interpret the contracts together. 15 O.S.2001 § 158. "Contractual intent is determined from the entire agreement." *Whitehorse v. Johnson,* 2007 OK 11, ¶ 14, 156 P.3d 41, 47.

¶ 12 One of the June 27, 2012 letter agreements is typed on the personal letterhead of "J. David Johnson" and is addressed to "McClary Trucking, Inc." at its address in Cameron, Oklahoma (the Buy Out). After identifying the Wells by name and location, the Buy Out reads as follows:

Gentlemen,

When executed this agreement will set forth the sale by McClary Trucking, Inc. and the purchase by J. David Johnson of the McClary's interest in the referenced Saltwater Disposal wells.

Whereas, Zephyr Operating Co, LLC and McClary Trucking, Inc. entered into an agreement for the sale and purchase of a Fifteen Percent (15%) interest in the Litsch well located in Section 10–16N–14W, Dewey County, Oklahoma and the Scheffler well located in Section 3–16N–14W, Dewey County, Oklahoma dated September 14, 2011.

Whereas, McClary Trucking, Inc. wishes to sell its interest to J. David Johnson, effective immediately, for the sum of $475,000 for all its right, title and interest to the existing equipment, the existing payables and receivables and all rights obtained under the letter agreement dated September 11, 2011 associated with the sale. *McClary will have no further obligation to Zephyr Operating Co, LLC or Zephyr SWD, LLC.* And Zephyr shall have no further obligation to McClary Trucking Inc.

This agreement will be binding on the heirs, successors of each party and

McClary warrants that the sale is free and clear of any claims, mortgages or other encumbrances that would affect this sale.

Should Johnson require any additional assurances to consummated (sic) this transaction, McClary will be obligated to assist Johnson regard (sic) this transaction.

The foregoing agreement is a complete purchase of the 15% interest and no other verbal or written agreement are represented by either party.

---

Page 2, Purchase of Litsch & Scheffler SWD wells

Sincerely,

[signature]

David Johnson

The undersigned, agree to sell all right, title and interest to J. David Johnson, for $475,000, the Litsch SWD & Scheffler SWD.

McClary Trucking, Inc.

[signature]

Subscribed and sworn before me, a notary Public, on this 27 th day of June, 2012.

By [name] [Notary Seal]

¶ 13 The second June 27, 2012 letter agreement is typed on "Zephyr Operating Co., LLC" letterhead and addressed to McClary at the same location (Second Agreement). The Second Agreement provides as follows:

Gentlemen,

The following parties agree as follows:

Zephyr SWD, LLC agrees to purchase one 300 bbls stock tank on location Scheffler for $3,000 from McClary Trucking, Inc.

McClary Trucking, Inc. will deliver the equipment for mud pumps to Zephyr.

McClary Trucking, Inc. will have the right to continue to deliver saltwater to Zephyr on a first come basis and payment will be expected within 30 days for said disposal. Zephyr will deliver a net check for the amount of $3,681.06 to settle any claims associated with the sale of McClary's interest to J. David Johnson.

Sincerely,

David Johnson

Accepted and agreed to this ―― day of June, 2012.

### Issues Raised on Appeal

¶ 14 In this appeal from the judgment in favor of Zephyr and finding McClary is indebted to Zephyr in the amount of $59,201.50, McClary does not raise error with the trial court's implied finding of a previous oral contract between Zephyr SWD and McClary for salt water disposal into the Wells at 50 cents per barrel. Instead, McClary challenges the court's interpretation and implied finding from its judgment that the two June 27, 2012 agreements do not release McClary of its liability under the oral contract.[3]

¶ 15 McClary first argues the *$475,000.00 negotiated payment* from "Plaintiff to Defendant" for the two SWD wells *includes* the invoices pre-dating the sale. It makes the same argument in the second proposition about the Buy Out's phrase "McClary will have no further obligation to [Zephyr Operating Co., LLC or] Zephyr SWD LLC." Relying on the latter phrase and the Second Agreement's sentence, "Zephyr [SWD, LLC] will deliver a net check for the amount of $3681.06 to settle *any claims associated with the sale* of McClary's interest to J. David Johnson," McClary finally argues the two agreements "when read together as contemplated by *15 O.S. § 158,* make its absolutely clear the parties intended to release each other from any claims prior to June 27, 2012."

¶ 16 We disagree. McClary's only support for its first argument is Shannon McClary's testimony that the selling price for its 15% interest "started at $550,000.00" and Johnson "netted out what [McClary] owed," *i.e.,* $75,000.00. Regarding similar testimony, the Court in *Ollie v. Rainbolt,* 1983 OK 79, ¶ 12, 669 P.2d 275, 279 held:

> The parol evidence rule, 15 O.S. [2011] § 137, provides that the execution of a contract in writing supersedes all *oral ne-*

*gotiations* or stipulations which preceded or accompanied the execution of the instrument. *All previous oral discussions are merged into, and superseded by, the terms of the executed written agreement or instrument.* Parol evidence cannot vary, modify or contradict the terms of the instrument. Where a contract is complete in itself and, as viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended. The intention of the parties cannot be determined from the surrounding circumstances, but must be gathered solely from the words used.

¶ 17 "The [parol evidence] rule fosters an important public policy—the certainty and stability of contracts." *First Nat. Bank in Durant v. Honey Creek Entertainment Corp.,* 2002 OK 11, ¶ 10, 54 P.3d 100, 103. "It is well-established in Oklahoma that the parol evidence rule does not preclude evidence of false and fraudulent representations of fact offered to establish fraud in the inducement of the execution of a contract, even when those representations directly contradict the contract provisions." *Id.,* ¶ 12. Although McClary initially raised fraud as an affirmative defense in its Answer, the record demonstrates McClary never later asserted either fraud or fraud in the inducement or opposed Zephyr SWD's motion for summary judgment based on either defense.[4]

¶ 18 McClary's first argument is contrary to the Buy Out's clear and unambiguous language which expressly limits its subject to the sale of McClary's 15% interest in the Wells *to* David Johnson personally, *not to* "Zephyr SWD," as McClary contends without supporting argument or evidence. There is no provision or reference in the Buy Out to a reduced or negotiated selling price or to releasing McClary's unpaid invoices, debts or accounts for saltwater disposal. Mr. McClary's testimony about the negotiated

---

3. At the conclusion of the December 16, 2013 hearing, the trial court announced based on her review of Plaintiff's Exhibit 4 and the two June 27, 2012 letters, "both of the letters are clearly limited to the interest that's being purchased and not to the invoices that had anything to do with the saltwater."

4. The certified court appearance docket has no entry for a Pretrial Conference or the filing of a Pretrial Conference Order.

price also contradicts the Buy Out's final provision stating it "is a complete purchase of the 15% interest and *no other verbal or written agreement are represented by either party.*"

¶ 19 McClary's interpretation of the Buy Out sentence, "McClary will have *no further obligation* to Zephyr Operating Co., LLC or Zephyr SWD, LLC" fails to consider the next sentence, "And Zephyr shall have *no further obligation* to McClary Trucking Inc." It also fails to consider the "obligation" the Buy Out identifies that is referenced in the Second Agreement.

¶ 20 Pursuant to the Buy Out, the sale to David Johnson of McClary's 15% interest in the Wells *includes* all of its "right title and interest ... [to] the existing *payables* and *receivables.*" Transfer of the latter interest clearly identifies the "obligations" between these joint interest owners which are ending upon the sale, *i.e.*, McClary's obligation to *pay* its share of monthly operating expenses in the Wells to Zephyr Operating Co., LLC or Zephyr SWD, LLC and the latter's obligation to pay McClary its share of income from the same Wells.. This relationship is totally distinct from that sued upon by Zephyr–McClary's "obligation" to pay 50 cents per barrel under the oral contract with Zephyr SWD to transport saltwater to the Wells for disposal-evidenced, *inter alia,* by McClary's admissions said agreement started at 30 cents per barrel, increased to 40 cents, and then 50 cents per barrel. Further, the uncontroverted evidence presented at the bench trial establishes the monthly billing by Zephyr SWD for McClary's obligation as a joint interest owner was done separately from the invoices billed to it for the saltwater disposal.

¶ 21 The trial court's interpretation implied from its judgment is further supported by the Second Agreement, in which the contracting parties are Zephyr SWD and McClary. Although advocating for reading the two agreements as one, McClary again focuses on a single sentence in the Second Agreement, "Zephyr [SWD, LLC] will deliver a net check for the amount of $3681.06 *to settle any claims associated with the sale* of McClary's interest to J. David Johnson" to argue the parties' intent was to *release* McClary from "claims prior to the date of the written release."

¶ 22 Interpreting the contract language "in full settlement of all claims and demands which [L.B. Golden] holds against the said Frances Golden or Frank J. Holden," the Court in *Golden v. Golden,* 1932 OK 76, ¶¶ 29–30, 155 Okla. 10, 8 P.2d 42, 45, considered a "claim" is "a demand of some matter as of right made by one person upon another, to do or to forbear to do some act or thing as a matter of duty" and the word "demand" is the "largest word in law, except claim" or "a legal obligation." Based in part on these definitions, the Court found "the language of the contract is sufficiently full and comprehensive to cover all rights, demands, claims, or disputes as to property existing at the time of executing said contract." *Id.*, ¶ 35.

¶ 23 In contrast to the all encompassing settlement terms in *Golden,* the Second Agreement *limits* the phrase "any claims" that will be "settled" by delivery of the "net check" for $3,681.06 to those "*associated* with the sale of McClary's interest to J. David Johnson." As used there, the common meaning of "associated" is "to join things together; connect one thing with another." *Webster's Third New International Dictionary* (1986), p. 132. We conclude this clear and unambiguous language refers only to the claims and/or obligations identified in the Buy Out between the joint interest owners, *not* to any existing claim Zephyr SWD might have against McClary for saltwater disposal. Considering the two related agreements as one, we find McClary's interpretation is without merit.

## CONCLUSION

¶ 24 The trial court's judgment in favor of Zephyr SWD, LLC is supported by record evidence and is **AFFIRMED.**

MITCHELL, P.J., and JOPLIN, J., concur.